LEWIS S. DOHERTY, III, Judge Pro Tem.*
These consolidated cases arise from various transactions between McKay (plaintiff in this appeal) and Prevost (defendant in this appeal), and legal entities controlled by them, which occurred during 1985 and 1986. McKay and Prevost entered into an' exchange of property and services. McKay owned a furniture store and interi- or design firm on Airline Highway, directly across the street from Prevost’s car dealership. Prevost approached McKay concerning a possible sale of McKay’s property to Prevost. After negotiations, a handwritten agreement was signed on November 9, 1985, effecting a lease of McKay’s property to Prevost for two years and to culminate in the sale of the property to Prevost for $1,100,000.00. Subsequently, on December 19, 1985, a new agreement was reached which reduced the purchase price by $30,-000 and which provided that Prevost would buy McKay's Airline Highway property at the same time that McKay’s building on the Highland Road property owned by Pre-vost was completed.
Two documents were executed to carry out this agreement: a Lease-Purchase Agreement in which McKay appeared as seller/lessor and which provided for the Airline Highway property’s lease to Pre-vost and Prevost’s purchase of that property at the time McKay’s building on Highland Road was completed, and another Lease-Purchase Agreement in which Pre-vost appeared as seller/lessor and in which he and a corporation controlled by him agreed to sell the Highland Road property to McKay. It is the former document which is in dispute in the present appeal.
Pursuant to the Lease-Purchase Agreement at issue, defendant took possession of plaintiff’s building on Airline Highway on April 15, 1986. Construction proceeded on the Highland Road property, and the City-Parish certified on August 19, 1986, that plaintiff’s new building on Highland Road conformed to code and could be occupied. Because the Lease-Purchase agreement provided that “The Act of Sale or Exchange is to be and shall be closed at the time that the building improvements to be constructed on Lots C-l and C-2 [the Highland Road property] are completed,” plaintiff’s lawyer wrote to defendant on August 22 enclosing the certificate of occupancy and stating, “It is now time to execute the exchange agreement, and we shall expect to complete and close this transaction as provided in the original agreement.” No response was forthcoming to this letter, and on September 11, 1986 plaintiff’s lawyer notified defendant’s lawyer that defendant was in default. That letter went on to say,
“This is to advise you that if Interplex, Inc. and Mr. Prevost do not make arrangements to close the exchange within *1262 ten days, they will be expected to surrender possession of the property located at 9585 Airline Highway. As per the Lease Purchase Agreement, if they do not surrender possession, they shall pay any and all damages suffered by Mr. McKay, but in no event less than five times the rent per day plus attorneys fees and costs.”
By a hand-delivered letter dated September 12, 1986, defendant’s lawyer notified plaintiffs counsel that October 17 would be a good day to close the sale because plaintiffs loan commitment expired on October 20, adding “If for some reason any of the facts outlined above are incorrect, please let me know.”
Although another letter was sent by plaintiffs lawyer on September 23, enclosing a copy of a letter from plaintiffs bank loan officer to plaintiffs lawyer clarifying the bank’s position as to the October 17 proposed closing date, it was not until September 30 that plaintiff’s lawyer again corresponded with defendant’s lawyer about the closing date. In that letter, plaintiff agreed to go through with the October 17 closing date, but reiterated his demand for stipulated damages as provided in the Lease-Purchase Agreement of $82,590.39, calculated at the rate of five times the rent per day dating from August 20, 1986 until October 15, 1986.
Defendant refused to pay the stipulated damages. The closing took place as proposed by defendant on October 17, 1986. On November 20, 1986, plaintiff filed suit for unpaid rent and penalties.
The consolidated cases were tried before a judge. After hearing plaintiff’s evidence, the trial judge granted defendant’s motion for involuntary dismissal under LSA-C. C.P. art. 1672. The trial judge found that, under LSA-C.C. art. 1778, the term of the obligation was uncertain but determinable; the judge applied a “reasonable time” standard to determine that there was no unreasonable delay. He noted that because plaintiff’s counsel admitted at trial that plaintiff was not ready to close the sale on the day the building was completed, but could close in five to seven days, that “what the contract said doesn’t mean what it says it said.” From this judgment, plaintiff appeals.[1]
Plaintiff assigns as error the following: (1) the trial court’s failure to apply the Civil Code articles specifically addressing stipulated damages rather than the general articles dealing with the term of obligations; (2) alternatively, its failure to apply the correct standard under LSA-C. C. art. 1778; (3) alternatively, its finding that a two-month delay in closing an Act of Sale was reasonable; (4) its failure to award liquidated damages; (5) its failure to award actual damages and attorneys’ fees under the contract. Rather than addressing each assignment individually, we group generally plaintiff’s arguments into two issues: whether liquidated damages are due under the contract, and, if not, whether and from what date delay damages are due.
LIQUIDATED DAMAGES
Plaintiff claims liquidated damages under the following clause of the contract:
Upon the violation of this lease-purchase agreement, PURCHASER-LESSEE shall immediately surrender possession. *1263 Should PURCHASER-LESSEE fail to do so, PURCHASER-LESSEE shall pay any and all damages suffered by SELLER-LESSOR, but in no cause less than five times the rent per day, plus attorney’s fees and costs.
The stipulated damage clause immediately follows the section of the Lease-Purchase Agreement titled “Default of Purchaser-Lessee,” which specifies various “actions or inactions” as default. Applicable here is sub-section (a), which states that the purchaser-lessee is in default if he “violates at any time any of the covenants, conditions and obligations of this lease-purchase agreement.”
The codal articles relative to stipulated damages are LSA-C.C. art. 2005 through 2012. LSA-C.C. art. 2005 states the general premise: that damages may be stipulated to be recovered in the event of nonperformance, defective performance or delay in performance of an obligation, and that the stipulation creates a secondary obligation intended to enforce the primary obligation. LSA-C.C. art. 2007 states, “An obligee may demand either the stipulated damages or performance of the principal obligation, but may not demand both unless the damages have been stipulated for mere delay.”
Here, plaintiff recovered the primary obligations which the stipulated damages clause was meant to enforce: the payment of rent (with the exception of two months’ rent, which was ultimately awarded in the companion lawsuit), and the purchase of the property by the defendant. In order to recover the secondary obligation, or stipulated damages, he must show that under LSA-C.C. art. 2007 the damages were stipulated for “mere delay.” The language of the clause at issue does not lend itself to this interpretation.
In Mason v. Coen, 449 So.2d 1195 (La. App. 2nd Cir.1984), a similar factual situation arose. A contract provided for a sale and lease, with a stipulated damages clause which further provided that, in the event of default in the payment of rent, the entire agreement would be null and void and all sums previously paid were to be nonrefundable. The court held that the stipulated damages clause enforced the primary obligations and was valid, but the plaintiff could not also recover part of its principal obligation.
In the instant case, the stipulated damages clause is tied to a lessee’s failure to vacate the premises upon default, rather than to delay. See also Lama v. Manale, 218 La. 511, 50 So.2d 15 (1951); Lebrum v. Hill, 452 So.2d 814 (La.App. 3rd Cir.1984), discussing similar clauses. The lessee was asked to vacate the premises only if he failed to make arrangements to close the loan, per the September 11, 1986 letter. Arrangements were promptly made, and no further requests were made that defendant vacate. In fact, at trial plaintiff admitted that it was not in his best interest that defendant vacate the premises; clearly plaintiff was more interested in closing the sale in order to fulfill his loan commitment for his own purchase of the Highland Road property. Plaintiff sued for rent, one of the primary obligations under the lease, as well as for stipulated damages, and obtained specific performance of defendant’s obligation to close the sale itself.[2] He cannot have it both ways under LSA-C.C. art. 2007.
DELAY DAMAGES AND PUTTING IN DEFAULT
In plaintiff’s original petition, he asked for stipulated damages and for the rent due from August 20 through October 17; there was no demand for damages under the contract, other than the stipulated damages. At trial, he introduced evi *1264 dence of his damages which was admitted by the trial judge for the limited purpose of proving that the stipulated damages sought were reasonable. Plaintiffs counsel stated at trial, “We’re not claiming the actual damages, but we’ve elected liquidated damages.” Nonetheless, on appeal he argues that, in the event this court finds that reasonable damages under the circumstances should be awarded rather than liquidated damages, he should be awarded $30,-000, or the difference between the first and second Lease-Purchase Agreements; $8,000 in damages he sustained because of the necessity to move his loan to a different bank with a higher interest rate, and damages for the loss of his banking relationship with his original bank. Plaintiff alleged that he gave up $30,000 in negotiating the sale in order to close the loan earlier, and that because of the delay in closing the sale, his relationship with his bank was terminated.
In order to recover any of these damages, which we characterize as delay damages resulting from defendant’s alleged delay in performing his obligation to execute the Act of Sale timely, plaintiff is required to place defendant in default. LSA-C.C. art. 1989. We agree with the trial judge, however, that plaintiff was not ready to perform his obligation at the time that he made his first demand on defendant to perform.
LSA-C.C. art. 1993 provides, “In case of reciprocal obligations, the obligor of one may not be put in default unless the obli-gor of the other has performed or is ready to perform his own obligations.” As defendant argues, plaintiff never provided a definite date of his own for the closing; his only demand was that defendant make arrangements within ten days to close. When defendant proposed October 17 as the closing date, plaintiff responded more than two weeks later that he agreed with the date. Plaintiff’s counsel at trial acknowledged that the closing could not be done the actual day the Highland Road building was completed. If not then, when? No other date was ever offered as an alternative to October 17, and the closing actually did take place on that day. Plaintiff clearly was not ready to perform himself any earlier than October 17, and cannot be said to have placed defendant in default. Without doing so, he cannot recover delay damages.
The concept of “putting in default" is closely related to the definition of “term,” upon which the trial court based its opinion. An obligee may only be put in default when performance is due upon the arrival of the term of the obligation. Damages for delay are owed from the time the obligor is put in default, and when the term for performance of the obligation is fixed or clearly determinable by the circumstances, the arrival of that term places the obligor in default; otherwise, the obligor must be placed in default by the obligee. LSA-C.C. art. 1989 and 1990.
The trial court relied upon LSA-C.C. art. 1778 to ascertain when the term for performance of the obligation to buy the Airline Highway property arrived. That article classifies terms for the performance of an obligation as either certain or uncertain, and further subclassifies uncertain terms as either not fixed, but determinable by the intent of the parties or by the occurrence of a future and certain event; or as not determinable, in which case the obligation must be performed within a reasonable time. The trial court found that the term, specified in the Lease-Purchase Agreement as “at the time that the building improvements ... are completed” was uncertain but determinable and therefore it applied a “reasonable time” test to find that defendant was not in default of the contract because he delayed two months after completion of the construction before closing the Act of Sale.
Plaintiff argues that the trial court should not have applied LSA-C.C. art. 1778, but rather the more specific articles on stipulated damages, to determine when performance was due. We disagree. The stipulated damages provision is a secondary obligation; first, a breach of the primary obligation must be found, and that determination is made by resorting to the *1265 general articles on obligations with a term. Plaintiff argues, however, that even if LSA-C.C. art. 1778 is applicable, the trial court erroneously applied the “reasonableness” standard, but instead should have looked to “intent of the parties.”
Whether “intent of the parties” or “reasonableness” is the correct standard to apply for this term, plaintiff cannot argue that defendant was in default of an obligation which he himself was not ready to perform. The parties apparently intended to perform the obligation reciprocally at some point after the completion of the Highland Road building. Even if the term were determined to be at the time the Highland Road construction was concluded, plaintiff could not place defendant in default at that time because he was not ready to close. If the term is construed to be at a “reasonable” time after the construction was concluded, the trial court’s finding is correct that two months was probably reasonable under the circumstances. LeBlanc v. City of Plaquemine, 448 So.2d 699 (La. App. 1st Cir.1984). The transaction was quite complex, requiring the advice of lawyers and accountants, and involved a large sum of money. We cannot say that under the circumstances two months was unreasonable.
We conclude that plaintiff cannot recover stipulated damages because, under LSA-CC. art. 2007, he cannot demand both stipulated damages and specific performance unless the stipulated damage clause goes to “mere delay,” which here it does not. We further conclude that plaintiff cannot put defendant in default when he himself was not willing to perform his reciprocal obligation to sell the Airline Highway property; therefore, regardless of what “at the time that the building improvements ... are completed” actually meant, defendant was not in default of his obligation to perform the contract timely. The judgment of the trial court is AFFIRMED. All costs are assessed to the plaintiff.
AFFIRMED.

 Judge Lewis S. Doherty, III, retired, is serving as judge pro tem. by special appointment of the Louisiana Supreme Court to fill the vacancy created by the temporary appointment of Judge Melvin A. Shortess to the Supreme Court.

. In Docket # 89 CA 1007, Prevost sued McKay for the breach of an agreement and the return of excess payments Prevost alleged he had made to McKay for furniture; Prevost also alleged he had provided vehicles to McKay. The lawsuit sought a determination of the amount Prevost actually owed to McKay under this arrangement. The trial court, in Docket # 89 CA 1007, applied the rent he determined Prevost owed McKay under the Lease-Purchase agreement at issue in the instant appeal to the credits Prevost was due for overpayments made to McKay. The judgment in Docket # 89 CA 1007 was for Prevost and [apparently inadvertently] Prevost Motors, Inc. in the amount of |8,416.18, plus legal interest and costs. No appeal was taken by either party from that judgment, and all that is at issue in this opinion is the involuntary dismissal granted by the trial court in favor of Prevost in Docket # 89 CA 1006. Defendant orginally answered the appeal seeking an increase in damages but elected not to pursue the increase in the amount of the judgment.

. See Note 1, above. Plaintiff demanded in his original petition in Docket # 89 CA 1006 the two months' rent owed allegedly by Prevost from August 20, 1986 to October 17, 1986. The trial judge determined that the rent was due, but applied it to McKay's judgment in Docket # 89 CA 1007. Therefore plaintiff recovered both primary obligations due under the Lease-Purchase Agreement.