678 So.2d 561 (1996)
Ivan David WARNER, III,
v.
CARIMI LAW FIRM, a Law Corporation, and Darryl J. Carimi.
No. 96-CA-55.
Court of Appeal of Louisiana, Fifth Circuit.
June 25, 1996.
Rehearing Denied September 17, 1996.
*562 Louis J. Cosenza, New Orleans, for plaintiff/defendant-in-reconvention/appellant.
William W. Hall, Metairie, and Darryl J. Carimi, Metairie, for defendants/plaintiffs-in-reconvention/appellees.
Before GAUDIN, BOWES and WICKER, JJ.
WICKER, Judge.
This is a dispute between two attorneys arising out of an employment contract between them. The trial court rendered partial summary judgment against the plaintiff-employee on the defendant-employer's reconventional demand, awarding $250,950.53 plus interest, attorney's fees and costs. We reverse, finding the matter was not ripe for summary judgment.
Ivan David Warner, III is an attorney formerly employed on a contract basis by the Carimi Law Firm, A Law Corporation ("CLF"), the corporate entity of attorney Darryl Carimi. Warner worked for Carimi for approximately five years, until March 10, 1995, when Carimi changed the door locks and refused to allow Warner access to his office and files. (Carimi alleges he locked out Warner because he discovered "Warner was involved in a conspiracy to leave Carimi Law Firm and to take with him the physical files and cases of the law firm (possibly a midnight raid).") Warner set up his own law practice at a new location, handling cases of clients he took with him from CLF.
Subsequently Carimi refused to pay Warner wages and fees allegedly due under their agreement, while Carimi demanded Warner repay monies Carimi had advanced to or on behalf of those clients, as required by the employment agreement. Warner then instituted this lawsuit for breach of contract, invasion of privacy arising from Carimi's search of Warner's desk, and for an accounting. Carimi countered with a reconventional demand seeking reimbursement from Warner of all outstanding costs and advances on any file he had taken over, plus liquidated damages and attorney's fees as set forth in the contract for Warner's failure to pay the costs and advances within the contractual time limit.
Several of Warner's clients who are former Carimi clients sought unsuccessfully to intervene in this suit. They alleged they had hired Warner as their attorney while he was working for Carimi and they wish to continue to employ him as their lawyer, but Carimi's financial demands on Warner make it impossible for him to continue to handle their cases. They sought to annul the contract between Warner and Carimi on the grounds that it impermissibly interferes with their attorney-client relationship and directly inhibits their rights to free choice of legal counsel by placing improper financial disincentives on Warner's acceptance of their cases and imposing severe financial burdens on him for continuing to represent them. The trial court refused to allow the intervention and this Court denied their writ application. *563 The intervention is not before us on this appeal.
Warner filed a motion for summary judgment dismissing the reconventional demand. Carimi in turn filed a motion for partial summary judgment for advances on files Warner took over, liquidated damages, interest, and attorney's fees under the terms of the contract. The district court denied summary judgment to Warner but granted partial summary judgment in favor of Carimi in the principal sum of $211,702.01, plus liquidated damages of 25% of the advances, less a credit of $13,676.98, plus interest at 12% per annum from July 10, 1995 until paid, plus attorney's fees equal to 20% of the total of principal plus interest, plus all costs.
Warner has appealed.
Warner's employment agreement with CLF contained the following relevant provisions:
This contract for the provision of daily legal services is terminable at will by either party upon giving written notice of intention to terminate. However, all obligations to CLF regarding CLF files or clients handled by IDW or I. David Warner or his agents remain in force.
* * * * * *
In the event this contract is terminated, the following ... shall employ [sic].
* * * * * *
[I]f IDW or I. David Warner, takes over any client that was being handled at CLF because the client discharges CLF [Carimi Law Firm], the out-of-pocket money advanced to or on behalf of the client by CLF shall be reimbursed to CLF in full within ten (10) days of IDW taking over the file. Additionally, IDW shall personally take over any guarantee of payment CLF has extended on behalf of client and hold CLF harmless for same.
Failure to reimburse CLF for all monies advanced to or on behalf of the client within the ten (10) day period shall result in IDW owing to CLF, liquidated damages for this failure equal to 25% of the owed monies and additionally IDW shall owe CLF interest on the principal plus liquidated damages from the day the file is taken over until paid at the rate of two (2) points over the prime interest rate of Investors Bank & Trust Company in Gretna during the period beginning from the date CLF is terminated until the money is paid to CLF in full. If IDW's services terminate under the contract, and he takes over a CLF file or client, he makes himself personally responsible for all monies advanced to or on behalf of the client by CLF regarding the file or case being taken over.
* * * * * *
If IDW fails to make any such payment as specified herein, then IDW, if sued by CLF and found to owe any fee or out-of-pocket money whatsoever, shall owe to CLF, in addition to those fees and monies held by the Court to be owed to CLF, an additional sum equal to twenty (20%) percent of [the gross fees plus out-of-pocket money, plus liquidated damages and interest owed] as an attorney's fee for CLF having to enforce collection under this contract plus all costs of Court and all out-of-pocket expenses expended by CLF in enforcing collection.
On appeal Warner contends the trial court erred in failing to find the cost-reimbursement and liquidated-damages provisions of the contract null; alternatively, he contends there are material issues of fact which preclude summary judgment. Our review of the record makes clear there are disputed issues of fact, but to determine whether those fact issues are material we must decide certain legal issues.

ENFORCEABILITY OF POST-TERMINATION PROVISIONS

Cost-reimbursement Clause
Warner contends the trial court erred in enforcing the post-termination provisions of the agreement because those clauses impose severe financial penalties upon Warner for continuing to represent his existing clients. Rule 5.6 of the Louisiana State Bar Rules of Professional Conduct, effective January 1, 1987, provides in pertinent part:
*564 A lawyer shall not participate in offering or making:
(a) A partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement.
Warner asserts the cost-reimbursement clause violates this Rule and therefore is void as against public policy. He relies primarily on Minge v. Weeks, 629 So.2d 545 (La.App. 4th Cir.1993), in which the court of appeal found an attorney's employment agreement was unenforceable because it required the employee attorney to give his former employer 80% of fees generated by cases the employee took with him when he left:
[A]lthough worded in terms of the lawyer's right to practice, the underlying purpose of Rule 5.6 is to ensure the client's freedom to select counsel of his or her choice.... Since the Rules are designed "to serve the public interest in maximum access to lawyers and to preclude commercial arrangements that interfere with that goal," the "plain meaning (of Rule 5.6) indicates that any provision, whether direct or indirect, that operates so as to restrict a lawyer's post-termination practice will contravene the ethical rule." ...
Although the financial disincentive provisions contained in the employment contract at issue here are not directly restrictive, they are of the type that violate the language and spirit of Rule 5.6:
Because the client's freedom of choice is the paramount interest to be served by the RPC, a disincentive provision is as detrimental to the public interest as an outright prohibition.
[Citations omitted.]
629 So.2d at 546-547. Relying on this language, Warner contends the cost-reimbursement and penalty clauses of the contract are void.
As the trial court pointed out, however, "Every attorney undertaking the representation of a client must consider the financial consequences of that representation." An attorney who contemplates a contingency fee agreement with a client must consider the expenses involved in the case and must weigh the client's ability to finance his own case against the necessity of the lawyer having to advance the costs.
Warner points to the large number of dollars that he would have to come up with for all of the files that he has taken over. The court notes that Warner has taken over files with as little as 22 cents outstanding. It also notes that Warner has taken approximately 120 active files. When considered on a per case basis and with the knowledge that he himself was actively involved in the decision making to incur the costs on the individual file[,] this argument rings very hollow.... Attorneys traditionally invest larger sums of money into cases with larger potential for damages. This makes good business sense.
[W]hen the contract was negotiated both parties understood full well that clients are more likely to go with the attorney who handled their file when the attorney leaves the law firm because they have a relationship with that attorney.... [U]nderstanding that reality the law firm and Warner agreed to the provisions of the subject contract regarding the repayment of the costs on each file by Warner when he moved to a different firm or went into private practice for himself taking these files with him. Carimi states it should not have to be the bank for Warner's new law practice.
If any financial consequence to an attorney is enough to render all agreements with the law firm that he worked with null as against public policy[,] then that would mean that lawyers could not enter into valid agreements amongst themselves regarding the business aspects of the practice of law.... A party asserting public policy as a defense to the contract has the burden of clearly establishing that there is a well accepted and clearly defined public policy that makes the contract terms unenforceable. Warner has not met that burden.
Reasons for Judgment, R. 153-154.
We agree with the trial court's statements. The affidavits filed in support of Carimi's *565 motion establish that Carimi funds litigation costs and advances to his clients through a line-of-credit arrangement at 12% annual interest, on which Carimi must pay monthly. As stated in Carimi's brief,
The Carimi contract in fact protects the underlying purpose of Rule 5.6 by establishing a method for funding files and an orderly departure of a contract attorney. Under the Carimi contract, a contract attorney can build his own practice, the clients' costs can be funded and Carimi can avoid the untenable situation of bearing all the risk and having no control over the file or the efforts to bring that file to fruition. This carefully convected [sic] arrangement is supportive of a client's free access to the lawyer of choice. The contract does not penalize a departing attorney. It only requires that he bear the financial responsibility associated with handling the files he takes from the law firm.
Appellees' Original Brief, p. 8.
Unlike the arrangement in Minge v. Weeks, this agreement does not penalize the attorney who actually performs the work on the case by forcing him to pay most of his fee to the former attorney. Rather, it simply shifts the burden of financing the case from the former attorney to the client's new attorney, which is where the burden should be.

Stipulated Damages
Warner also contends the court erred in enforcing the "liquidated damages" clause of the employment contract. He asserts the stipulated damages are clearly punitive in nature and a claim for stipulated damages cannot be cumulated with a claim for actual damages, as a matter of law. The Civil Code permits parties to contracts to stipulate the damages to be recovered "in case of nonperformance, defective performance, or delay in performance of an obligation." La.Civ.Code Art. 2005. Warner relies on La.Civ.Code Art. 2007, which provides, "An obligee may demand either the stipulated damages or performance of the principal obligation, but he may not demand both unless the damages have been stipulated for mere delay." Under the language of the agreement we find the damages stipulated in this contract were for mere delay and therefore are recoverable together with the principal amount. See McKay v. Prevost, 563 So.2d 1260 (La.App. 1st Cir.1990).

Interest on Client Advances
Warner argues the court erred in its determination of the amount of the summary judgment since a substantial portion of the cost balance awarded by the court consisted of interest charges on client advances which could not ethically be collected from Warner's clients. The trial court rejected this argument as frivolous, stating that the only persons who could raise such an issue would be the clients themselves. We agree with that ruling.

ISSUES OF MATERIAL FACT
Although we have found the post-termination provisions of the agreement enforceable, it is clear that we must reverse the summary judgment due to the presence of several issues of material fact.

Amount of Attorney's Fees
Warner argues there are issues of material fact concerning the amount of the attorney's fees. As awarded by the court, the fees would exceed $50,000 because the court based it on the percentage set forth in the contract.
According to the Louisiana State Bar Rules of Professional Conduct, Rule 1.5, "A lawyer's fee shall be reasonable," the amount to be determined by numerous factors set forth in the rule:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;

*566 (6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
The prohibition against unreasonable attorney's fees cannot be abrogated by contractual provisions fixing attorney fees as a percentage of the amount to be collected. Central Progressive Bank v. Bradley, 502 So.2d 1017 (La.1987). Rather, courts may, when called upon, examine the record and ascertain whether attorney fees are excessive and unreasonable even when there exists a contractual stipulation fixing fees at a percentage of amount to be collected. Sunbelt Federal Bank, F.S.B. v. Catha, 517 So.2d 385, 386 (La.App. 5th Cir.1987).
The amount of attorney's fees to be awarded was an issue of fact that the trial court should not have decided on summary judgment. The trial court erred in awarding Carimi 20% attorney fees when the record does not establish the reasonableness of that amount.
De Facto Representation of Clients
Warner argues the court erred in its determination of the amount of the summary judgment since genuine issues of fact existed concerning Warner's de facto representation of the clients whose cost balances were included in the amount of the judgment. As Warner asserts, there are questions of material fact concerning not only which clients he took over, but also the amounts due on their individual cases, and the dates on which he "took over" each file. Further, Warner filed an affidavit stating that some of the clients listed by Carimi had not, in fact, retained him to continue to represent him. Thus, partial summary judgment was premature.

Breach of Contract by Carimi
Warner contends the question of Carimi's breach of the contract was a material issue of fact which precluded the granting of summary judgment. Specifically, Warner asserts Carimi failed to comply with the contract's requirement that he give written notice of intent to terminate: "In locking Warner out of his office without advance notice, Carimi not only breached obligations that were due to Warner, but also made performance of Warner's obligations to Carimi impossible." Appellant's Original Brief, p. 15. Warner contends that Carimi may not recover damages because the contract involved reciprocal obligations, so that "the obligor of one may not be put in default unless the obligor of the other has performed or is ready to perform his own obligation." La. Civ.Code art. 1993.
On this issue the trial court noted,
[T]he contract in question by its very terms states that it is terminable at will by either party. Warner and Carimi Law Firm could at any time discontinue their association with each other. The only requirement was that each give a written notice of termination.... [N]owhere in Warner's affidavits does he deny that he was given written notice of termination. In any event, the Court does not feel that notice of the intent to terminate is an issue in this case. Both parties certainly knew that the contract was being terminated, discussed it with each other and in fact neither one has raised in their affidavits the issue of whether or not written notice was given.
We agree with the trial court on this point.
In addition we find that any fact questions arising from this issue are not material for purposes of this appeal. The factual question of whether Carimi's failure to give written notice to Warner was a breach has no effect on Carimi's motion for partial summary judgment. The legal issue in the motion is Carimi's right to recover the costs and damages set forth in the contract for cases Warner took with him following termination. There is nothing in the contract to limit that right where Carimi failed to give notice of termination. Accordingly, whether Carimi breached the contract in that manner is irrelevant to Carimi's motion.

DECREE
For the foregoing reasons, the partial summary judgment is reversed and the case is *567 remanded for further proceedings. In awarding attorney's fees, if any, the trial court is directed to consider the factors set forth in the Louisiana State Bar Rules of Professional Conduct, Rule 1.5. Costs of this appeal are assessed equally against the parties.
REVERSED AND REMANDED.