725 So.2d 592 (1998)
Ivan WARNER, III
v.
CARIMI LAW FIRM, A Law Corporation and Darryl J. Carimi.
No. 98-CA-613
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1998.
Rehearing Denied January 25, 1999.
*593 Louis J. Cosenza, and Thomas E. Schafer, III, New Orleans, Louisiana, Attorneys for Appellant.
William W. Hall, and Darryl J. Carimi, Metairie, Louisiana, Attorneys for Appellee.
Panel composed of Judges EDWARD DUFRESNE, Jr., SOL GOTHARD and MARION F. EDWARDS.
EDWARDS, Judge.
Plaintiff/appellant I.David Warner appeals four judgments in favor of defendants/appellees Carimi Law Firm and Darryl J. Carimi. We affirm for the reasons to follow herein.
This lawsuit originated as a dispute between two attorneys arising out of an employment contract between them. For facts and procedural history see the previous opinion of this court Warner v. Carimi, 96-55 (La.App. 5th Cir.6/25/96), 678 So.2d 561. Briefly, Warner instituted this lawsuit against Carimi, and Carimi reconvened against Warner. Warner filed suit for breach of contract involving a termination agreement, for invasion of privacy, and for an accounting. The Carimi suit requested reimbursement for outstanding costs and advances on files taken by Warner, and liquidated damages and attorney fees for breach of contract. At the conclusion of that opinion we found that the partial motions for summary judgment disclosed questions of material fact precluding the granting of summary judgment. We set aside those judgments and remanded the matter to the district court.
After remand the trial court rendered three partial summary judgments on September 8, 1997. One judgment was in favor of Carimi in the sum of $204,218.44; the second judgment was also in favor of Carimi for $366,373.07. The third judgment denied several motions by Warner (which motions are irrelevant to this appeal) and granted an exception of no cause of action on a petition *594 filed by Warner under La.R.S. 51:1409 et seq. (the Unfair Trade Practices Act).
Pursuant to a motion filed by Warner, in February of 1998 the trial court gave written reasons for the earlier partial summary judgments of September 8, 1997. Those judgments were appealed. In our second opinion on this case, Warner v. Carimi Law Firm, 97-1259 (La.App. 5th Cir. 4/1/98), 1998 WL169810, 712 So.2d 924, we found those judgments were not appealable under amended La.Code Civ.Pro. art.1915, and we remanded them to the district court for an evidentiary hearing to determine whether they should be certified as appealable judgments. On April 2, 1998, a motion was filed to designate those judgments (of September 8, 1997) as final and appealable.
In January 1998, Carimi had filed another motion for partial summary judgment asking the court to enforce the termination provisions of the contract and declare that all of the fees paid on the files taken over and concluded by Warner are owned by Warner and Carimi in proportions of 50% each and that the amount thereby owed to Carimi was $164,193.75. Carimi also requested judgment compelling Warner to pay interest on Carimi's portion of the fees which Warner refused to turn over. Warner filed exceptions of lack of jurisdiction and lis pendens. Warner alleged that one of the fees in question, on the case of Gerald Honore v. Preferred Risk Mutual Insurance Company et al., was filed in Civil District Court in Orleans Parish and that the fee was the subject of concursus proceedings invoked by Carimi.
On April 22, the trial court heard these motions and on April 27, 1998, rendered judgment in favor of Carimi for $164,193.75 in attorney fees plus interest. Regarding the Honore case fees which totaled $306,205.00, it was found that Warner and Carimi each owned 50%. The exceptions filed by Warner were denied and this judgment was designated as final and appealable.
Also on April 22, 1998, the trial court heard the motion to designate the September 8, 1997 judgments as final for appeal purposes. On May 5, 1998, the court rendered judgment certifying the September rulings as final and appealable under C.C.P. art 1915.
Warner has appealed all four of the partial summary judgments.

ASSIGNMENT OF ERROR # 1-THE COURT ERRED IN ENFORCING A CONTRACT WHICH IS AGAINST PUBLIC POLICY
On appeal, Warner alleges that the trial court erred in enforcing a contract which is against public policy as embodied in the rules of professional conduct. Warner urges that the case of Minge v. Weeks, 629 So.2d 545 (La.App. 4th Cir.1993) is applicable to the facts herein and that the present contract violates Rule 5.6 of the Rules of Professional Conduct. Appellant avers that it is now established law in Louisiana that all cases involving the discharge of counsel require the balancing of the eight factors set forth in Saucier v.Hayes Dairy Products Inc., 373 So.2d 102 (La.1978) and Rule 1.5(a). O'Rourke v. Cairns 95-3054 (La.11/25/96), 683 So.2d 697.
In our original opinion of this case, we found that the contract, insofar as the cost-reimbursement provision is concerned, was not violative of public policy. There we agreed with the trial court that:
"if any financial consequence to an attorney is enough to render all agreements with the law firm that he worked with null as against public policy, then that would mean that lawyers could not enter into valid agreements amongst themselves regarding the business aspects of the practice of law ... a party asserting public policy as a defense to the contract has the burden of clearly establishing that there is a well accepted and clearly defined public policy that makes the contract terms unenforceable. Warner has not met that burden."
The present argument concerns the division of attorney fees.
Neither O'Rourke nor Saucier involved an employment contract between two attorneys, as in the present case. In Saucier, supra, a client discharged his attorney without cause and employed a second attorney who settled the case. The Supreme Court concluded *595 that only one contingency fee should be paid by the client while also denouncing quantum meruit as a method of compensating an attorney retained under a contingency fee contract:
[T]he amount of the fee [is] to be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which he executed. Further, that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question, such fee apportionment to be on the basis of factors which are set forth in the Code of Professional Responsibility.

Saucier, supra.

In O'Rourke, supra, the question also involved an attorney who was discharged by his client and then entered into a contingency fee arrangement with a second attorney. The Supreme Court determined:
We therefore hold that in cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the Saucier rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. The court should then allocate the fee between or among discharged and subsequent counsel based upon the Saucier factors. Thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the Saucier allocation.

O'Rourke, supra.

O'Rourke does not address the question of fee sharing among attorneys within the same law firm, or of an employment contract between attorneys. Rather, those above decisions protect the client who chooses to discharge his attorney with cause from having to pay a double contingency fee; further, the attorneys who perform work on a case are protected based upon the quality and quantity of services which they rendered. Neither case involves an agreement between attorneys as to how a fee will be shared, nor do they attempt to interpret such a contract.
Furthermore, the judgment in question involves attorney fees on cases which have been concluded. The trial court stated herein:
"... the court notes that Warner has presented no proof that this contract in any way prevented him from representing any client on any file that is the subject of this Motion for Summary Judgment. As a matter of fact, quite to the contrary as is evidenced by the record, Warner undertook the representation of every client whose file is the subject of this Motion and brought that case to a successful conclusion. Therefore this Court concludes that any theoretical impairment of a client's ability to choose the attorney of their choice is simply not borne out by the facts of this case. And from a theoretical point of view, this Court notes that an agreement such as the one herein wherein two attorneys in the same law firm who freely agree to a particular split of a fee at the conclusion of a case if one or the other terminates their employment is actually very conducive to the orderly conduct of practicing law .... this Court approves of contracts whereby attorneys avoid unnecessary litigation by setting up formulas between themselves which allow for the orderly break up of a law practice."
We agree with the trial court. The present contract does not impinge upon a client's right to the attorney of his choice, as did the contract in Minge, supra. Rather the instant situation is more analogous to that in Duer and Taylor v. Blanchard, Walker, O'Quin and Roberts, 354 So.2d 192, (La. 1978), than either Saucier, supra or O'Rourke, supra. In Duer, the question involved the division of attorney fees where one law firm had associated another in a case. The Supreme Court found:
Where an attorney retained in a case employs or procures the employment of another attorney to assist him, as regards the division of the fee, the agreement constitutes a joint adventure or special partnership. McCann v. Todd, 203 La. 631, 14 So.2d 469 (1943). The interest which each *596 attorney possesses under such an agreement is the right to participate in the fund resulting from the payment of the fee by the client. Therefore, a suit by an attorney against another attorney to recover, pursuant to such an agreement, a portion of the fee collected by the latter party from the client is not one for the recovery of attorney's fees, but rather is one for breach of the agreement to share in the fund resulting from the payment of the fee.
When the attorneys in a Duer situation have entered into an agreement regarding the division of the fee the Code of Professional Responsibility (or Rules of Professional Conduct) does not prohibit enforcement of that agreement and does not require apportioning of the fee on a quantum meruit basis. Scurto v. Siegrist, 598 So.2d 507, (La.App. 1st Cir.1992). We think this reasoning is applicable to the present case. The contract between these parties is a breach of contract action between two knowledgeable parties and does not violate the Code of Professional Responsibility. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 2LIQUIDATED DAMAGES
Appellant asserts that it was error as a matter of law to award liquidated damages in a contract for the payment of money. Warner correctly states that in Warner v. Carimi Law Firm, supra, this court ruled that the liquidated damages provided for in the contract were damages that were for mere delay and therefore recoverable together with the principal amount. Appellant is incorrect in characterizing that finding as dicta. We held in that opinion that in order to determine whether there were disputed issues of material fact so as to preclude summary judgment, "we must decide certain legal issues". Dictum is defined in part, in Black's Law Dictionary, Fifth Edition (1979) as
a statement, remark or observation; a gratuitous or voluntary representation, one which a party is not bound to make.... not necessarily involved in the case or essential to its determination ... Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand.
The enforceability of the liquidated damages clause was presented as an assignment of error in that case. We determined that resolution of that issue was necessary to the question of materiality and made a finding that the damages stipulated in the contract are recoverable. There is no question but that our conclusion was not dicta, but is rather law of the case.
Under the "law of the case" doctrine, an appellate court will not reconsider its own rulings of law in the same case. However, application of the principle is discretionary. It is not applicable in cases of palpable error or when, if the law of the case were applied, manifest injustice would occur. Vincent v. Ray Brandt Dodge, 94-291 (La. App. 5th Cir. 3/1/95), 652 So.2d 84, writ denied, 95-1247 (La.6/30/95), 657 So.2d 1034.
Farinelli v. St. John the Baptist Parish-School Bd., 97-57 (La.App. 5th Cir. 4/29/97), 694 So.2d 1073. Finding neither manifest injustice nor palpable error, we find no reason to revisit this issue.

ASSIGNMENT OF ERROR # 3INTEREST ON CLIENT ADVANCES
Warner again argues to this court that it is a material issue of fact whether interest on client advances is an "out-of-pocket expense" under the contract. As before, we have addressed this issue in our earlier opinion where we held that the only persons who may raise such issue are the clients. As we have been presented no reason to reconsider the issue, this is still the law of this case.

ASSIGNMENT OF ERROR # 4 BREACH OF CONTRACT BY CARIMI
Warner argues that Carimi's breach of contract was a material issue of fact precluding summary judgment. This issue was also determined in the prior appeal and for the reasons cited above we see no grounds to re-examine the matter again.

ASSIGNMENT OF ERROR # 5NEW TRIAL OF THE SUMMARY JUDGMENT FOR FEES
Appellant avers that the trial court erred in denying him a new trial of the *597 summary judgment for fees on the issue of quantum. He argues that the worksheet attached to Carimi's motion for summary judgment, which affected the quantum of the judgment rendered, contained two errors. The exhibit in question is a listing of 44 fees collected by Warner, the amount of each fee owed by Warner to Carimi, interest accrued, and any payments made. Warner alleges that through inadvertence, he did not notice that the fees in two of those cases were "overstated". Warner urges that interventions by other attorneys had been filed and were pending, and as a result, the actual amount of the fee to be divided had not been determined. Warner alleges that this was a simple accounting error and requested a new trial. The court denied new trial, finding that "the time for submitting evidence regarding these motions has long passed ..."
La.Code Civ. Pro. art.1972 provides the peremptory grounds for granting a new trial which are, in pertinent part, (1) when the verdict or judgment appears clearly contrary to the law and the evidence or (2) when the party has discovered since the trial evidence important to the cause, which he could not with due diligence have obtained before or during the trial. Although Warner submitted copies of petitions for intervention with his motion for new trial, he admitted that the interventions were still pending and undetermined; it appears that the judgment as regards these fees was not contrary to either the law or the evidence. The petitions had been filed long before the exhibit was admitted into evidence, and so did not constitute newly discovered evidence; Warner states to this court the "error" was one of inadvertence. For these reasons we do not find that the trial court was bound to order a new trial under C.C.P. art.1972. La.Code Civil Pro. art.1973 allows the court the discretion to grant a new trial if there are good grounds therefor.
The jurisprudence accords the trial court great discretion in granting a new trial. Territo v. Schwegmann Giant Supermarkets, Inc., 95-257 (La.App. 5th Cir. 9/26/95), 662 So.2d 44; Estate of Hagan v. Fike, 436 So.2d 1338 (La.App. 5th Cir.1983). The appellate courts will not disturb a decision of the trial court denying a motion for new trial unless there has been a clear abuse of discretion. Territo, supra; Ancona v. Lathan, 506 So.2d 222 (La.App. 5th Cir.1987). We find no abuse of discretion in the refusal of the trial court to consider evidence which could have been presented at the original trial of the matter. Furthermore, as appellee points out, for purposes of this judgment Warner has received the money. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 6-"ADDITIONAL INTEREST AND COSTS" WERE NOT RECOVERABLE UNDER THE CONTRACT
By this assignment of error, Warner alleges that the summary judgment for costs included an award for $60,880.33 designated by Carimi as "additional interest and costs". According to Warner, the nature of the costs were not identified by Carimi but "are known to consist, at least in part, of court costs for interventions filed by Carimi in clients cases throughout several jurisdictions". The additional interest is interest levied against the client advances after a 10 day "cutoff period" as well as interest levied against the above "additional costs". Warner states that he is not liable under the terms of the contract for any costs which are incurred by Carimi more than ten days after he(Warner) took over a particular file.
The trial court found that the affidavits submitted on behalf of Carimi in support of the motion for costs were not contested as to amounts, and the only amounts put at issue by Warner were for the interventions. The court determined that the contract provides that Warner shall be responsible for "all costs of court and all out of pocket expenses expended by CLF in enforcing collection"; therefore it was proper to include those amounts (as recoverable under the contract).
As the trial court stated, Warner admitted in his deposition to the correctness of the original amounts as set forth in the Carimi affidavits. Warner averred in his opposition affidavit that court costs incurred by Carimi to file interventions in a number of cases *598 were included as "additional costs" on Carimi's schedule.
To the extent that the additional interest included in the judgment was, as Warner alleges, interest levied against the client advances, that issue has been addressed previously hereinabove. With regard to the additional costs being costs for interventions filed by Carimi, the contract contains a clause which states in pertinent part:
If IDW fails to make any such payment as specified herein, then IDW, if sued by CLF and found to owe any fee or out-of-pocket money whatsoever, shall owe to CLF .... plus all costs of Court and all out-of-pocket expenses expended by CLF in enforcing collection.
The trial court correctly determined that the sums spent for interventions by Carimi to collect part of its fees was expended to enforce collection and provided for under that clause of the contract. This assignment of error is without merit.

ASSIGNMENT OF ERROR # 7-THE TRIAL COURT ERRED IN MAINTAINING CARIMI'S EXCEPTION OF NO CAUSE OF ACTION UNDER THE LOUISIANA UNFAIR TRADE PRACTICES ACT.
On December 12, 1996, and May 14, 1997, Warner filed amended and supplemental petitions alleging that certain actions of Carimi constituted violations of the Unfair Trade Practices Act, La. R.S. 51:1409 (UTPA). Carimi filed an exception of prescription. The court, ex proprio motu, took notice of Warner's failure to state a cause of action or to have an interest in the cause of action. The court found that Warner's claims did not arise from a consumer or competitor relationship with Carimi, and that Warner had averred the employment contract is at the heart of the matter:
... each of the specific allegations raised by the plaintiff are premised upon either his employment relationship with the defendant or the operation and the effect of the parties' employment contract, particularly the provisions which set forth their obligation with respect to the termination of the practice of law together.
The Court further found that those claims of Warner which occurred prior to December 12, 1995, were perempted under the statute, citing Kuebler v. Martin, 610 So.2d 270 (La. App. 5th Cir.1992). The court determined that the amending petition did not relate back to the filing of the original petition, since peremption cannot be interrupted nor suspended.

No Cause Of Action
On thorough review of the facts alleged by Warner, we have serious reservations as to plaintiff's right of action under the UTPA. We find that peremption has barred most of the alleged violations, and that Warner has simply failed to allege acts which sound under the statute.
La. R.S. 51:1409(E) states:
The action provided by this section shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action.
Peremption, and not prescription, applies to lawsuits brought under Unfair and Deceptive Trade Practices Act. Kuebler, supra. A peremptive statute totally destroys the previously existing right with the result that, upon expiration of the prescribed period, a cause of action or substantive right no longer exists to be enforced. Pounds v. Schori, 377 So.2d 1195, (La.1979). Peremption is prescription which is not subject to interruption or suspension. Bunge Corp. v. GATX Corp., 557 So.2d 1376 (La. 1990).
The cases cited by Warner which permit a perempted action to relate back to the original opinion are not controlling in this circuit, and we decline to follow them. Moreover, the cases are distinguishable.[1] This suit was *599 not a clarification of the capacities of the parties, as in Meadoux v. Hall, 369 So.2d 240 (La.App. 4th Cir.1979), also cited by plaintiff. Our survey of the jurisprudence indicates that the action may have been maintained had the applicable period been one of prescription. However, because a peremptive period may not be interrupted or suspended, we decline to hold that a cause of action which has been totally destroyed may be resurrected by the plaintiff. At the time Warner filed the petition the cause of action or substantive right no longer existed. The trial court correctly held that most of the allegations attempting to urge a cause of action under the UTPA had been extinguished by peremption.
The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether plaintiff is afforded a remedy in law based on the facts alleged in the pleading. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La.C.C.P. art. 931. In deciding the exception, the court must accept the well-pleaded allegations of fact as true. The issue at trial is whether, on the face of the petition, plaintiff is legally entitled to the relief sought.
Lybrand v. Newman, Drolla, Mathis, Brady & Wakefield, 95-9 (La.App. 5th Cir. 10/31/95), 663 So.2d 850 (citations omitted).
As to the remaining allegations contained in the petition, we have carefully reviewed the actions which are not barred by peremption, and find that they do not sound under the Unfair Trade Practices Act. This assignment of error is [w]ithout merit.

ASSIGNMENT OF ERROR # 8-THE TRIAL COURT ERRED IN AWARDING PERSONAL JUDGMENTS AGAINST WARNER FOR FEES WHICH HAVE NOT BEEN "RECEIVED" BY WARNER
The September 7, 1997 judgment for $366,373.07 represented fifty percent of the fees earned by Warner since leaving the Carimi firm. Warner avers to this court that this amount was for all fees withheld by him from client settlements, and that most of the money representing these fees had been deposited by Carimi and Warner into the Carimi/Warner dispute account.
Warner has also appealed a fourth partial summary judgment on this matter, granted by the trial court on April 27, 1998, which judgment represented 50% of certain other fees earned by Warner since rendition of the September 7, 1997 judgment. One of the fees in question there is that in the case of Gerald Honore v. Preferred Risk Mutual Insurance Company, et al, No. 95-11588 in the Civil District Court in New Orleans. Warner alleges that HONORE fee represents $153,125.00 of the April 1998 judgment. Warner avers that he has never received any portion of the fee because it has been deposited into the registry of the Civil District Court pending the trial of a concursus proceeding, convoked for the specific purpose of resolving the competing claims of the parties to the fee.
Warner argues to this court that none of these fees had been "received" by him under the terms of the contract, since they were in the registry of the court or in the dispute account.
The contract provided for payment to Carimi of 50% of the total fee recovered on each case which Warner took with him, to be paid thirty days after the total fee is received by Warner. We agree with the determination of the trial court that for purposes of this agreement, availability of the fees to Warner in the present case constitutes "receipt". Once the cases were concluded, and the fees deducted and placed into the account, the argument that they are "unavailable" to Warner because of the present litigation is specious at best. The purpose of this litigation and the escrow accounts is to determine the apportionment of the disputed fees. Appellant is correct in asserting that acceptance of that argument would lead to the impossibility of a judgment against Warner for these amounts, as long as the disputed amounts remained in escrow accounts. Such finding would defeat the purpose of holding these *600 amounts in the registry of the court. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 9-THE TRIAL COURT ERRED IN OVERRULING THE EXCEPTION OF LIS PENDENS
Warner filed an exception of lis pendens with regard to the HONORE fee. It was alleged that the Orleans Parish Court had jurisdiction over all matters involving that lawsuit since it was filed in August of 1995, and as stated above, the fee therein was the subject of concursus proceedings.
The Warner/Carimi litigation has been pending in 24th Judicial District Court for approximately three years: Warner filed his original suit in April, 1995, and Carimi reconvened in June 1995. The trial court found that:
... the heart of the issue in this litigation is the entitlement to attorney fees generated in Warner/Carimi cases once the case has been concluded by either judgment or settlement and the funds have been paid by the defendant to the client and the attorneys. In the Gerald Honore case ... according to the admission of his counsel, Mr. Warner either had actual possession of a check made payable to his client, Gerald Honore and himself and Carimi Law Firm or was offered such a check by the defendant's counsel which he refused. Mr. Warner then requested or induced the defendant to provoke a concursus proceeding even though the defendant was willing to turn over the check to Mr. Warner which could have been distributed to the client by use of the Warner/Carimi dispute account which had been used by Warner and Carimi in numerous other settled cases. This would have left the disputed attorney's fees in that bank account. However, Mr. Warner chose to have the defendant file the money into the registry of the Civil District Court.
This court feels that the issue of the right to attorney's fees generated by cases taken over by Mr. Warner regarding Warner/Carimi cases which cases are covered by the contract which is at the heart of this litigation between the parties and which this Court has previously determined in 44 other cases is certainly ongoing litigation between these parties which involves the subject matter herein. As noted by both counsel in oral argument before this Court both today and at previous times there have been other cases in which interventions were filed which cases were decided by this Court according to the provisions of the contract between the parties. No party objected to this Court's jurisdiction to decide the issue. For these reasons, this Court holds that this is the proper court to determine this issue between these parties.
The court also found that the actions of Warner (of attempting to have monies deposited in a variety of courts) constituted forum shopping since it would necessitate the interpretation of the contract by different judges in different jurisdictions.
LSA Code Civ.Pro. art. 531states:
When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all.
The first suit concerning fees to be divided between Carimi and Warner was the one presently on appeal before this court. Since initiated, the determination of this suit has required interpretation and application of the Warner/Carimi contract. Further, the record shows that the Warner/Carimi "dispute account" had been established for some time in this case prior to the commencement of the concursus proceedings. We think it indisputable that the Jefferson Parish case is the "first suit" in the resolution of the contract fees due, and agree with the trial court that Warner's provocation of concursus proceedings in the Civil District Court was blatantly impermissible forum shopping.
The test for deciding whether an exception of lis pendens should be granted is to inquire whether a final judgment in the *601 first suit would be res judicata in the subsequently filed suit. Domingue v. ABC Corp., 96-1224 (La.App. 4th Cir. 6/26/96), 682 So.2d 246; Bunch v. Schilling Distributing Inc., 589 So.2d 502 (La.App. 3rd Cir.1991). The exception of lis pendens has the same requirements as the exception of res judicata, and is properly granted when the suits involve the same transaction or occurrence between the same parties in the same capacities. Domingue, supra. Applying the jurisprudence to our facts, it appears that if either action was subject to the objection of lis pendens, it would be the Orleans Parish proceeding rather than the present suit, since a judgment on it, the first proceeding, would be res judicata in the subsequently filed Orleans Parish proceeding. Hence we find no error by the trial court in the denial of the exception.
For the foregoing reasons, the judgments are affirmed. Appellant is assessed all costs of this appeal.
AFFIRMED.
NOTES
[1] For example, Thibaut v. Thibaut, 607 So.2d 587 (La.App. 1st Cir.1992) permitted an amendment to an action previously filed under the UTPA for an accounting and for an injunction, to include a claim for damages. Monroe Medical Clinic v. Hospital Corp. 622 So.2d 760 (La App. 2nd Cir.1993) permitted an amended petition to relate back where the original action was filed under the UTPA and merely alleged additional examples of the defendants' unlawful actions. Southside Civic Ass'n, Inc. v. Warrington, 93 0890 (La.App. 1st Cir. 4/8/94), 635 So.2d 721 involved a situation where only difference between the timely filed first petition and untimely amended petition was that latter added required verification.