748 So.2d 641 (1999)
George CHITTENDEN and Roberta Kay Chittenden
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
No. 98-CA-2919.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1999.
Rehearing Denied January 14, 2000.
*642 Robert H. Matthews, Bezou & Matthews, New Orleans, Louisiana and Pauline M. Warriner Hearin & Warriner, LLC, New Orleans, Louisiana, Counsel for Plaintiffs/Appellants.
Jack Alltmont, New Orleans, Louisiana, Counsel for Intervenor/Appellee.
Court composed of Judge JAMES F. McKAY, III, Judge DENNIS R. BAGNERIS, Sr., Judge ROBERT A. KATZ.
KATZ, Judge.
This case is an outgrowth of a dispute between two attorneys arising out of an employment contract between them and has been ongoing for some years now. Until this matter was tried in the Civil District Court, all previous litigation between the two attorneys has transpired in Jefferson Parish. See Ivan David Warner, III v. Carimi Law Firm, a Law Corporation, and Darryl J. Carimi, 96-CA-55 (La.App. 5th Cir.06/25/96), 678 So.2d 561, rehearing denied Sept. 17, 1996; Warner v. Carimi Law Firm, 97-1259 (5th Cir.04/01/98), 712 So.2d 924; Ivan Warner, III v. Carimi Law Firm, Law Corporation and Darryl J. Carimi, 98-CA-613 (La. App. 5th Cir.12/16/98), 725 So.2d 592, rehearing denied 01/25/99, writs denied; I. David Warner, III v. Carimi Law Firm, 678 So.2d 561, No. 477-212, Division "N", 24th Judicial District Court for the Parish of Jefferson, and in particular the "Reasons for Judgment" issued by the Honorable Susan Chehardy, Judge, on January 22, 1998.
In the case sub judice, the Chittendens had entered into a contract with the Carimi Law Firm and Darryl J. Carimi individually to represent them as a result of an accident. Somewhere along the line several significant events occurred: (1) the Chittendens discharged Darryl J. Carimi as their attorney; (2) Ivan David Warner, III, left the law firm of Darryl J. Carimi and took most of the files he was working on with him; (3) the Chittendens reached a settlement of their claims with State Farm; (4) Darryl J. Carimi and his law firm timely filed an intervention into the proceedings to protect his right to a legal fee as per the contract with the Chittendens as well as to protect his right to reimbursement of expenses and costs as per the contract; (5) a portion of the settlement proceeds were escrowed in the registry of the court pending resolution of the claims by Darryl Carimi; and (6) Ivan David Warner, III, commenced litigation in Jefferson Parish over the legality of the *643 contract between himself, Carimi and his law firm.
Sometime in April, 1998, Carimi and his law firm filed a Motion to Reimburse Expenses in the case sub judice. The Honorable Preston H. Hufft was designated by the Supreme Court to try this matter as a Judge "Ad Hoc". Judge Hufft tried the Motion to Reimburse Expenses on December 2 and 9, 1997, and April 16, 1998.
On July 9, 1998, the wise and experienced trial judge rendered judgment with reasons. The Judgment was in favor of Darryl J. Carimi, individually, and against George Chittenden in the "sum of Forty Nine Thousand Seven Hundred Fifty Nine and 85/100 Dollars ($49,759.85) to be payable out of the funds deposited in the registry of the court."
Roberta Kay Chittenden joined with her husband George Chittenden in filing a Motion for a Devolutive Appeal on September 1, 1998, from the judgment dated July 9, 1998. However, the order granting the appeal was not signed by the trial court until September 9, 1998.
This matter comes before us on a devolutive appeal from a judgment on a Motion to Reimburse Expenses.

SPECIFICATION OF ERRORS BY CHITTENDENS
1. The trial court erred in finding that the contract entered into by Mr. Chittenden and Darryl J. Carimi did not violate the letter, spirit or intent of the Rules of Professional Conduct;[1]
2. The trial court erred in failing to find that Carimi Law Firm charged usurious interest;
3. The trial court erred in finding that Carimi Law Firm does not charge a fee for the financing and merely passes on to the client the amounts it has paid in interest to the lending institution;
4. The trial court erred in finding that Carimi Law Firm was unaware of the follow-up care necessary to assure the success of Mr. Chittenden's TMJ surgery and thus was entitled to reimbursement of the expenses associated with the TMJ surgery.

DISCUSSION AND THE LAW

ASSIGNMENT OF ERROR # 1, # 2 AND # 3
Appellants argue that Carimi is not entitled to be reimbursed for the interest charges for several reasons: Rules 1.4 and 1.8 of the Rules of Professional Conduct prohibit it; Opinion 95-055 of the Louisiana State Bar Association Ethical Advisory Service Committee prohibits collection of interest pursuant to Rules 1.4 and 1.8; and a district court opinion by the Honorable Marcel Livaudais of the United States District Court for the Eastern district of Louisiana in Evans v. Cal Dive International, Inc., 1998 WL 799234 (E.D.La.1998)
The experienced and wise trial judge had this to say about these arguments of the appellants in his "Reasons for Ruling": "...With respect to the claim that the interest paid by the Carimi Law Firm to the Delta and Region Banks is not reimbursable, the court finds as follows:
"The contract entered into by Mr. Chittenden and the Carimi Law Firm did not violate the letter, spirit or intent of the Rules of Professional Conduct. The contract *644 was fair and reasonable and was much more reasonable than that which Mr. Chittenden entered into with Jeffer Investment, Inc., at an annual interest rate of 37.75 % and the 28 % loan with a lending institution entered into by Mr. Chittenden, while he was represented by Mr. Smith.
"The method employed by the Carimi Law Firm to finance the advances to clients and the payment of medical expenses and costs is advantageous to clients who are required to reimburse the interest charge. The Carimi Law Firm does not charge a fee for the financing and merely passes on to the client the amounts it has paid in interest to the lending institution-at a much lower interest rate than the client would have been able to obtain on his own."
As noted by both the appellants and appellees, advisory opinions "are without legal force or effect, as provided in the rules of the Ethics Advisory Service.... The bar also does not guarantee that these opinions will be upheld by any disciplinary authority that might be called upon to review identical factual situations."
It is obvious that the "ghost writer(s)" of the advisory opinion for whatever reasons they may have had, chose to ignore the fine "dissertation" by the late learned Justice Tate in his decision in Louisiana State Bar Assn v. Edwins, 55456, 329 So.2d 437 (La.1976).
With respect to the weight to be given to the decision in Evans v. Cal Dive International, Inc., supra, by Judge Livaudais, the law is settled that this appellate court is bound to follow the decisions of our Supreme Court. See Giarrusso v. New Orleans Book Mart, Inc., 304 So.2d 734 (4th Cir.1974); D'Antoni v. D'Antoni, 432 So.2d 926 (4th Cir.1983). Though holdings of federal courts are persuasive and are entitled to much respect, they will not be followed by the Louisiana Supreme Court or lower state courts in the face of positive jurisprudence of the Louisiana Supreme Court to the contrary. Hinchee v. Long Bell Petroleum Company, 235 La. 185, 103 So.2d 84 (La.1958).
Hence, this court is bound by the eloquent decision by Justice Tate in Louisiana State Bar Association v. Edwins, 55456 (La.1976) 329 So.2d 437.[2]
This decision has withstood time and various assaults on the principles enunciated therein even as recently as the advisory opinion and the judgment by Judge Livaudais, which are both cited by the appellants.
In Louisiana State Bar Association v. Edwins, 55456 (La.1976) 329 So.2d 437, 444-448, the Supreme Court was faced with disciplinary action against an attorney, inter alia, for having made advances to his client in violation of DR5-103 (B) in effect in 1976. DR5-103 (B) stated:
"While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, except that the lawyer may advance or guarantee the expenses of litigation, including court costs, expenses of investigation, expenses of medical examination, and costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses."
DR5-103 (B) has been replaced by Rule 1.8 which is applicable in the case sub judice and reads as follows:
"A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that (1) a lawyer may advance court costs and expenses of litigation, the repayment which may be contingent on the outcome of the matter; and (2) a lawyer representing an indigent client *645 may pay court costs and expenses of litigation on behalf of the client."
Also relevant in the case sub judice is the current Rule 1.5(c) which provides:
"...a contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination."
In the Edwins case the evidence reflects that the attorney had advanced to his client, Thomas, various sums of money on various occasions, i.e. $20.00, $50.00, $30,00, $10.00, etc., which totaled $894.00. Additionally, the attorney had bought tires ($30.41), paid three car notes ($67.50 each), paid two other finance notes ($31.04 each), and arranged for and paid for the hospitalization and operation of Thomas ($579.25) in connection with a non-accident related painful condition. Additionally, the attorney also paid for Mrs. Thomas to stay at a hotel ($36.04), so that she would be near her husband during his hospitalization. Edwins had also arranged for his client to receive a $650.00 loan from a finance company (partially owned by Edwins) and on various occasions when Thomas would request money Edwins would advance him various amounts that totaled $2,000.00 in cash advances.
"In summary, the final accounting of Edwins to Thomas showed that he had advanced $4,210.00 in all, of which $1,480.01 was for direct expenses of preparing for trial."
In footnote one on page 445 there were other out-of pocket expenses which were charged to Thomas, i.e. telephone calls, out-of-town travel at 12 cents per mile and the hotel expenses of the out-of-town trial. The contract between Thomas and Edwins was silent with regard to liability for the latter (about $500.00) expenses. In the absence of other contractual arrangement, we do not find "irregularity in charging such expenses to the client's account, to be reimbursed upon final settlement (and they are shown by the present record to be reasonable); but the better practice might well be to have liability for such latter type out-of-pocket expenses to be clearly assumed or not by the client at the time of the retainer, so as to prevent misunderstanding and dissatisfaction such as here resulted."
Justice Tate, then opined that "a total of $2,733.12 (including $579.25 for hospitalization and surgery for a non-accident related illness) represents a type of advance which is arguably prohibited by the letter of Disciplinary Rule 5-103(B)... Nevertheless, under the circumstances here shown, we are unwilling to hold that the spirit or the intent of the disciplinary rule is violated by the advance or guarantee by a lawyer to a client (who has already retained him) of minimal living expenses, of minor sums necessary to prevent foreclosures, or of necessary medical treatment." supra, at 445.
The learned, Justice Tate, then went on to observe at 446: "If an impoverished person is unable to secure subsistence from some source during disability he may be deprived of the only effective means by which he can wait out the necessary delays that result from litigation to enforce his cause of action. He may, for reasons of economic necessity and physical need, be forced to settle his claim for an inadequate amount. We do not believe that any bar disciplinary rule can or should contemplate depriving poor people from access to the court so as effectively to assert their claim... Nor do we see how a lawyer's *646 guarantee of necessary medical treatment for his client, even for a non-litigation related illness, can be regarded as unethical, if the lawyer for reasons of humanity can afford to do so. The advances and guarantees here made are, in our opinion, more akin to the authorized advance of expenses of litigation then to the prohibited advances made with improper motive to buy representation of the client or by way of advertising to attract other clients. We note that the disciplinary rule permitting the advance of "expenses of litigation" include certain instances as illustrative, but that it does not clearly exclude other expenses similarly necessary to permit the client his day in court, such as arguably are the present." at 446.
Furthermore, Justice Tate, stated: "In our opinion, the better view of those decisions which apply the former canons of ethics (replaced by the present code of professional responsibility) was that the advancement of living expenses did not constitute a violation of professional responsibility, so long as (a) the advances were not promised as an inducement to obtain professional employment, nor made until after the employment relationship was commenced (b) the advances were reasonably necessary under the facts (c) the client remained liable for repayment of all funds, whatever the outcome of the litigation and (d) the attorney did not encourage public knowledge of this practice as inducement to secure representation of others." supra, at 446.
Additionally, Justice Tate, opined that "a similar interpretation of the present code of professional responsibility may be more difficult in view of the different wording of the present-day disciplinary rule at issue. Nevertheless, for the reasons earlier stated, we believe that it is justified. At least under the circumstances here shown, the spirit and intent of the canon and the ethical considerations involved is similarly not a violation of professional conduct subject to disciplinary penalty. It is more akin to the permitted advances of expenses of litigation than to the prohibited advances to purchase an interest in a law suit or to induce a client to retain the lawyer." supra, at 447.
Justice Tate, also makes another insightful observation at 446: "... if the intent of the disciplinary rule were indeed to prohibit the type of advances and guarantees here made, we have some doubt as to its constitutionality. In Brotherhood of Railroad Trainmen v. Virginia, 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89(1964), the United States Supreme Court struck down a state regulation of the practice of law, holding that such regulation could not unreasonably handicap a claimant's right to petition the courts nor unreasonably inhibit the enforcement of a federal statutory right. For similar reasons, a courtadopted bar disciplinary rule which places an unreasonable burden upon an individual's right to enforce claims allowed him by law might be deemed violative of the access to courts guaranteed to all our people by our state constitution."
The Third Circuit in Dupuis v. Faulk, 91-1139 (La.App. 3 Cir. 12/09/92) 609 So.2d 1190, 1192-1193 cited the Supreme Court decision in Edwins for the proposition previously quoted with respect to the advancement of living expenses. The Court of Appeal also noted that Rule 1.8(e) embodies the former disciplinary Rule 5-103(B) which was referred to in the Edwins decision. The Third Circuit went on to state: "Clearly, advances for humanitarian expenses are recognized by this decision. It is apparent under the clear wording of the statute that the medical and living expenses advanced (by the attorneys in the case sub judice) are now included as part of the fee for privilege purposes... We cannot find a hidden, improper motive on the part of the attorney(s) in advancing the medical and living expenses... We conclude that the trial court was correct in including the advances in the attorneys' privilege."
Moreover, as recently as 1991, the Supreme Court in Succession of Wallace, 574 So.2d 348 (La.1991) made this observation *647 concerning the Rules of Professional Conduct at p. 356:
"The disciplinary rules are rules of reason that should be interpreted and applied with reference to the purposes of maintaining appropriate professional standards and protecting the public and the courts from substandard attorney conduct. In performing its regulatory function by applying and interpreting the disciplinary rules, this court will look beyond superficialities for legal, economic and social realities..."
We have reviewed the record and are in agreement with the trial court that neither Darryl J. Carimi nor his law firm has violated any rules of professional conduct in making advances to the plaintiffs and in passing along that portion of the interest attributable to the plaintiffs on the line of credit with the banks. This is in accord with the economic, legal and social realities that are part of the legal profession as we know it today. Additionally, after reviewing the record we do not agree with the appellants that Darryl J. Carimi charged usurious interest and neither can we find a hidden, improper motive on the part of Darryl J. Carimi or his law firm in advancing the sums of money claimed.
Accordingly, we affirm the trial court judgment in awarding Darryl J. Carimi the sum of Forty Thousand Eight Hundred Fifty-Nine and 25/100 Dollars ($40,859.25) as reimbursement for the interest paid to the banks on the line of credit.

ASSIGNMENT OF ERROR # 4
Appellants argue that Darryl J. Carimi is not entitled to reimbursement for the expenses associated with Mr. Chittenden's unsuccessful TMJ surgery since Mr. Carimi would not advance the funds necessary for Mr. Chittenden's follow-up medical care.
After reviewing the record we agree with the trial court that Mr. Chittenden
"failed to prove by a preponderance of the evidence that Mr. Carimi ever entered into such an agreement or was informed by Dr. Fournet of the necessity for any further treatment (of the TMJ problem) during the time that such further treatment may have had a beneficial effect. The only evidence of any such notification to Mr. Carimi of the need for an additional treatment is contained in a report by Dr. Journet[Fournet] to Mr. Carimi months after it had become apparent that the operation was not successful. The court notes that during the period from the time of the operation and the discharge of Mr. Carimi as his attorney, Mr. Chittenden received thousands of dollars in advances from Mr. Carimi. The court finds....that it would not seem logical that Mr. Carimi would have refused to pay for additional medical treatment, which would have furthered Mr. Chittenden's claim against the insurance company..." Reasons for Ruling.

Accordingly, we affirm the reimbursement to Darryl J. Carimi of the following medical costs that he had advanced on behalf of Mr. Chittenden: Four Thousand Four Hundred and No/100 Dollars ($4,400.00) to Dr. Leon Fournet; Four Thousand One Hundred and No/100 Dollars ($4,100.00) to East Jefferson Hospital; and Four Hundred and No/100 Dollars ($400.00) to Parish Anesthesia Association.

CONCLUSION
For the foregoing reasons, we affirm the trial court's awarding of Forty Nine Thousand Seven Hundred Fifty Nine and 85/100 Dollars ($49,759.85) by the plaintiffs to Darryl J. Carimi as reimbursement of expenses, which sum of money is to be paid to Darryl J. Carimi from the funds on deposit in the registry of the trial court with the Clerk of Civil District Court. Also, due to the nature of the issues raised, each party is to bear their own costs of the appeal.[3]
AFFIRMED.
*648 McKAY, J., concurs.
BAGNERIS, J., dissents with reasons.
McKAY, J., concurring.
I concur in the result reached by Judge Katz and would affirm the trial court.
BAGNERIS, J., dissenting:
I respectfully dissent from the majority opinion:
George Chittenden and Roberta Kay Chittenden appeal a trial court's judgment on a motion for partial summary judgment for costs in favor of Carimi Law Firm (hereinafter know as Carimi). The Chittendens contends the trial court erred in finding that (1) the contract between George Chittendens and Carimi violated the Rules of Professional Conduct; (2) the trial court erred in finding Carimi charged usurious interest; (3) the trial court erred in finding that Carimi does not charge a fee for the financing and merely passes it on to the clients the amounts it paid in interest to the Bank; (4) the trial court erred in finding Carimi was unaware of the follow-up care necessary to assure the success of Mr. Chittenden's TMJ surgery and thus was entitled to reimbursement of the expenses associated with the TMJ surgery.

FACTS
The money at issue is the proceeds of a personal injury lawsuit filed by George Chittenden and his wife, Roberta K. Chittenden entitled George Chittenden and Roberta K. Chittenden v. State farm Mutual Automobile Insurance Company and Gina Doisy, Case No. 92-9708, Civil District Court for the Parish of Orleans. Carimi filed a motion to reimburse expenses advanced to George Chittenden for medical expenses, living expenses, personal loans, court costs and other related expenses.
On December 9, 1997 the trial court heard the motion and the matter was taken under advisement. The trial court rendered judgment on July 9, 1998 in favor of Carimi and against the Chittendens. The Chittendens filed a devolutive appeal from the trial court's judgment.
This court in Jackson v. America's Favorite Chicken Company, 729 So.2d 1060 (La.App. 4Cir. 1999) outlined the perimeters for review of partial summary judgment. This court has consistently opined that a partial summary was subject to dismissal where the record failed to contain clear and concise statements why there was no just reason for delay of the appeal, the trial court failed to designate the judgment as a final judgment, and there was no evidence that the parties agreed in the trial court that the judgment was final. Jackson, id.
In the instant case, the trial court was silent as to whether there was just reason for delay of the appeal, and it failed to designate the judgment as a final judgment for the purpose of immediate appeal. The signing of the order of appeal does not satisfy the requisites of LSA-C.C.P. art. 1915 (B) for an immediate appeal. Banks v. State Farm Insurance Co., 708 So.2d 523 (La.App. 2Cir. 1998).
Further the record is devoid of any evidence that the parties agreed in the trial court that the judgment was a final judgment. Thus, we find that the partial summary judgment is not immediately appealable. Also, we decline to certify the partial summary judgment as immediately appealable on the appellate level. Further, we decline to convert this case into a supervisory writ. Finally, we decline to remand this case to the trial court in order to consider whether the partial summary judgment merits immediate appeal, because the judgment was signed one year after the enactment of the amendments of LSA-C.C.P. art. 1915(B).
Therefore, because I find that the record fails to comply with the provisions of *649 LSA-C.C.P. art. 1915(B) I would dismiss the appeal filed by the Chittendens.
NOTES
[1] In Warner v. Carimi, 678 So.2d 561, 565 (5th Cir.1996) Warner attacked the right of Carimi to collect "interest charges on client advances" arguing that such interest charges could not "ethically be collected from his (Warner's) clients." The appellate court agreed with the trial court that Warner could not raise this issue: "...only persons who could raise such an issue would be the clients themselves." The Fifth Circuit also noted at p. 564 that "Warner has taken approximately 120 active files." Warner was persistent on this "interest issue" and re-urged it to the 5 th Circuit which again reiterated its prior position that "the only persons who may raise such issue are the clients." Warner v. Carimi, 725 So.2d 592, 596. Hence, the lawsuit sub judice wherein the clients(Chittendens) are now raising this issue.
[2] It is an enigma to this writer why the Rules of Professional Conduct and especially Rules 1.5 and 1.8 were not drafted to reflect the Supreme Court decision by Justice Tate, which was written in 1976, which permits lawyers to advance living expenses to those clients who are in need and to re-coup expenses incurred.
[3] According to the trial court's Reasons for Ruling, Mr. Chittenden did not question the reimbursement to Mr. Carimi of some $46,162.54 which included sums advanced, payment of medical expenses and advancement of costs.