hCANNELLA, Judge.
This is an appeal by defendant, the St. John the Baptist School Board, from a workers compensation judgment which finds plaintiff, Margaret Farinelli, entitled to supplemental earnings benefits. We affirm.
Plaintiff was employed by defendant as a special education teacher on March 2, 1990 when she injured her back while lifting one of her physically handicapped students. As a result, she received temporary total disability payments of $275 per week from March 2, 1990 until April 18, 1990.[1] At that time she was released to work by Dr. David Aiken, Jr.
On April 27, 1990, plaintiff requested further medical treatment by Dr. Ward Beecher. He treated her until October 8, 1990. However, her pain did not resolve and became worse. She was having difficulty walking and with her balance. In December she was tested and treated by Dr. Robert Mimel-is and Dr. R. Fleming. No disc or nerve condition was found.
| sAt school, plaintiff had two teaching assistants who helped her with the physical needs of the students. Both assistants testified that teaching this class was physically demanding. Some of the students were physically handicapped, requiring assistance with any number of functions, while others were emotionally disturbed. Some had both challenges. The maximum number of children in the class was twelve. Plaintiff loved her work and in order to cope with her pain and difficulty when lifting and walking, she gave more of the physical responsibility to the assistants. In addition, plaintiff used ice packs for the pain and brought a sofa into the classroom so that she could prop her legs up and rest. Her medical benefits were paid until October of 1991.
Plaintiff continued to work with pain for the next two years. Finally, on March 9, 1992, she wrote a letter of resignation, effective March 31, 1992. At this point, the pain was becoming intolerable. In addition, the administration notified her that another child with emotional problems was being added to the class. In October of 1992, plaintiff was treated by Dr. Randall Voohries. Alexsis approved treatment and referred her to her treating physicians. Plaintiff never saw a doctor of her choosing. Plaintiff also received physical therapy. She was initially diagnosed with lumbar sprain and told not to bend or lift for six weeks. After she returned to work, she was given various tests. The medical reports showed that in March of 1990, she had a nerve sheath injury and/or a partial ligament tear around one of the lumbar discs. An electromyogram (EMG) indicated increasing muscle irritability in March of 1991 with regression. In 1992, minimal posterior marginal osteophytes in the neck and an “old” mild decompression fracture were noted.
14After resigning, plaintiff continued to contact Alexsis for benefits. Without informing her that her file was closed, office personnel began to “stonewall” her attempts. In November of 1994, plaintiff sought and received a packet from the Office of Workers’ Compensation. At that time she sought legal advice. In January of 1995, plaintiff filed a claim for disability. Defendant filed an exception of prescription for the disability benefits, but does not dispute plaintiffs right to medical benefits.
The exception of prescription was heard on June 15, 1995 and in August, the hearing officer granted the exception. On appeal, *1075 this court reversed, finding that the claim for supplemental earnings benefits (SEB) was not prescribed. On remand, the hearing officer rendered judgment on October 24, 1996 in favor of plaintiff for SEB in the amount of $295 per week for a maximum of 520 weeks beginning March 31, 1992, with appropriate deductions under La. R.S. 23:1223 B.
On appeal, defendant contends that the hearing officer was manifestly erroneous in awarding plaintiff SEB or, alternatively, in the amount of the award.
Defendant contends that plaintiffs claim for SEB is untimely because her claim for disability has prescribed under La. R.S. 1209, as held by this court in the first appeal. Therefore, the claim for SEB has also prescribed. Further, defendant argues that the claim is untimely because it was filed more than two years after termination of temporary total disability payments, pursuant to La. R.S. 23:1221(3)(d)(i). Defendant adds that plaintiff is not entitled to SEB because, in order to receive benefits for SEB, she must be partially disabled. Defendant contends that plaintiff is totally disabled and cannot receive benefits for partial disability.
IsThese arguments have already been addressed by this court in our unpublished opinion, Farinelli v. St. John the Baptist School Board, 95-916 (La.App. 5th Cir. 1/30/96), 668 So.2d 499, writ denied, 96-0516 (La.4/19/96), 671 So.2d 927. Under the “law of the ease” doctrine, an appellate court will not reconsider its own rulings of law in the same case. However, application of the principle is discretionary. It is not applicable in cases of palpable error or when, if the law of the case were applied, manifest injustice would occur. Vincent v. Ray Brandt Dodge, 94-291 (La.App. 5 Cir. 3/1/95), 652 So.2d 84, writ denied, 95-1247 (La.6/30/95), 657 So.2d 1034.
In this case, we find no reason to revisit the issues. We have previously found that the claim is not prescribed and that plaintiff filed a timely suit for SEB. That means that she is entitled to SEB, if she can prove that she is unable to earn wages equal to ninety per cent or more of wages at time of injury, under La. R.S. 23:1221(3).
On remand, concerning plaintiffs entitlement to SEB, a hearing with only oral argument was held, but no new evidence was introduced. Thus, the only evidence of entitlement to SEB was introduced at the hearing on June 15, 1995, which this court reviewed in the prior appeal, finding as follows:
... Claimant’s uncontroverted testimony revealed that on March 2, 1990, she received a work-related back injury as a result of her employment as a special education teacher with the St. John the Baptist School Board.
On the day of her employment accident, claimant thought she had unrelated medical problems and went to see a physician, who, to her surprise, diagnosed a lumbar problem and referred her to Dr. David Aiken, Jr. On March 20, 1990, Dr. Aiken diagnosed a back sprain and partial ligament tears, and recommended that she refrain from engaging in her work duties. Claimant then subsequently was released back to work and received temporary total disability benefits through June 11, 1990.
lain December, 1990, Alexsis Risk Management (Alexsis), the administrator for the Board’s worker’s compensation system, required claimant to be evaluated by Dr. Robert Múñeles (orthopaedic surgeon), who recommended a lumbar myelogram, contrast-enhanced CT scan and an EMG nerve conduction study. Dr. Mímeles referred claimant to Dr. Hugh Fleming (neurologist) and on December 14, 1990, performed an electromyographic study. The medical records reveal that the studies showed “irritability noted in L4-L5 (mye-tone) on the right side. Abnormal study.” This study revealed signs of nerve root compression on the right side of the lumbar disc at L4-L5. Further studies on March 11, 1991 and August 13, 1991, showed regression of claimant’s physical functions.
Claimant testified at trial that in the latter part of 1991, Dr. Fleming would not treat her because Alexsis would not pay his bill and had rejected Dr. Fleming’s recommendations for rehabilitation. Finally, the records reflect that on June 24, 1991, Alexsis closed claimant’s workmen’s *1076 compensation account without any release or instructions from any physicians. On September 17,1991, by letter, Dr. Fleming comments to Alexsis that previous studies showed that claimant’s physical condition is regressing and not progressing.
Claimant testified at trial that her physical problems and unbearable pain had deteriorated to a point in 'March, 1992, that she could no longer perform her work-related duties and was forced to resign her teaching position. Claimant stated that principal, Sterling Simon, asked her to resign in December, 1991, because her physical problems were causing her to miss work. Claimant testified that in early 1992, Alexsis scheduled her to see Dr. Voorhies, who advised that she suffered from chronic back pain and recommended another lumbar MRI in connection with water rehabilitation and positive intervention. Dr. Voorhies stated that “in time, she would be able to return to gainful employment”. Claimant further testified that it took Alexsis about five months to schedule the MRI requested by Dr. Voor-hies on March 25, 1992. The MRI taken on September 4,1992, revealed a compression fracture at disc level T12 at the superior ímplate. At this point, Dr. Voorhies recommended to Alexsis, for the second time, on October 16, 1992, that claimant receive rehabilitation at Ochsner occupational medicine department and that the exact nature of her ability to work was unknown without further rehabilitation and testing.
Claimant testified that after receiving a copy of Dr. Voorhies’ letter of October 16, 1992 (which was directly addressed to Alexsis) she continued to contact Alexsis to get approval for rehabilitation and treatment as recommended by Dr. Voorhies. Claimant’s testimony |7that Alexsis took no steps to rehabilitate her or to provide her with any further medical eare is undisputed.
In addition, plaintiff and her two teaching assistants, Mildred Adams and Amy Charles, testified that she was working in pain during the two years following the accident. They testified that she used a cane and brought in a sofa for rest during the day. Because of the continuing pain, plaintiff delegated more and more of the physical duties to assistants. Those duties involved feeding, pushing wheelchairs, bathroom assistance and dealing with behavior problems. It was uncontro-verted that plaintiff was a good teacher who loved her job and was attempting to cope with the back problems until she resigned. According to plaintiff and her husband, David Farmelli, since then, instead of getting better, the pain has worsened. She is unable to do housework or drive and she requires someone with her when she walks because her legs spontaneously give out. She also uses a cane or walker and cannot carry objects. She has trouble standing after being seated.
La.R.S. 23:1221(3) provides:
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee’s inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
|8(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for *1077 purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subpara-graph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee’s or employer’s community or reasonable geographic region.
(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
Plaintiff testified that defendant has never offered her any other position with the school system or otherwise. Defendant did not contest this fact.
Plaintiff has proved that she is unable to earn wages equal to ninety per cent or more of wages at the time of injury under La.R.S. 23:1221(3). Furthermore, defendant failed to present any evidence that plaintiff is employable and was offered employment or that employment is available to her in her geographic region, under R.S. 23:1221(3)(e)(i). Based on this evidence, we find that the hearing officer did not err in awarding plaintiff |9SEB. We further find that the hearing officer did not err in the amount of the award.
Next, defendant contends that plaintiff “withdrew” from the work force and that under Allen v. City of Shreveport, 637 So.2d 123 (La.1994), she is only entitled to 104 weeks of benefits.
Plaintiff sent her letter of resignation on March 9, 1992, stating she was unable to continue working because a child was assigned to her class who was extremely disturbed and would be a threat to her health. She stated that “... physically and emotionally I am unable to sustain handling the addition of another behaviorally disturbed child to an already burdensome class load ...” The evidence showed that plaintiff was having more and more difficulties with the physical demands of her job. Plaintiff and her husband testified that she was worn-out with the pain. They hoped that she would get better if she no longer had to deal with the physical and emotional demands of her job. Furthermore, the evidence shows that plaintiff was asked to resign by her principal several months previously, in December, but that she wanted to keep working. The evidence is uncontroverted that plaintiff left the position because of her work related disability. Based on this evidence, we find the hearing officer did not err in finding that plaintiff did not withdraw from the work place or retire, which would limit her benefits.
Accordingly, the judgment of the trial court is hereby affirmed and costs of appeal are assessed to defendant.
AFFIRMED.

. Defendant is self-insured and Alexsis Risk Management (Alexsis) is defendant’s claims administrator.