WALTER J. ROTHSCHILD, Judge.
 

 12Pefendant, Maria Perez, appeals the trial court’s September 11, 2008 judgment finding her liable to plaintiff, Lifetime Homes, Inc. d/b/a Lifetime Foundations (“Lifetime”), in the amount of $13,325, plus interest, costs, and attorney fees. She also appeals the trial court’s March 9, 2009 judgment denying her Motion for New Trial. For the following reasons, we reverse the March 9, 2009 judgment denying Ms. Perez’s Motion for New Trial, vacate the September 11, 2008 judgment, and remand this matter for a new trial.
 

 FACTS AND PROCEDURAL HISTORY
 

 On November 21, 2001, Lifetime filed a Petition for Breach of Contract and Petition to Recognize and Enforce Lien against Maria Perez. In its petition, Lifetime claims that Ms. Perez was the owner of the immovable property located at 3429-31 Florida Avenue and that she entered into an agreement with Lifetime on February 15, 2001 to have the house shored for the price of $26,650. According to Lifetime, Ms. Perez made one payment of approximately $13,350, but she has refused to pay the remaining $13,300 that became due when the work was completed. Lifetime further asserts that due to plumbing problems under the house and Ms. Perez’s delays in repairing these problems, Lifetime expended $50,633.51 |sto complete the work. On January 17, 2002, Ms. Perez filed an Answer generally denying the allegations in Lifetime’s petition.
 

 Trial of this matter was held on February 11, 2008. At trial, Jim Howard, Lifetime’s representative, testified that Lifetime is in the business of taking homes that are not level and making them as level as possible. He stated that Ms. Perez’s home had settled approximately 14.8 to 17 inches and that she hired them to level the house as much as possible. In the contract between the parties, Lifetime set forth the procedure it would use to raise the house and indicated that sand would be pumped under the house after it was raised. The contract further noted that a complete “lift and level” could not be achieved due to the fact that the home had settled approximately 17 inches, and Ms. Perez’s initials are on the contract next to this note. The contract provided that Ms. Perez would pay Lifetime $26,650 to perform the work. However, Ms. Perez refused to pay the final $13,300 because she claims that the work was not properly completed and that Lifetime caused damage to the house.
 

 Mr. Howard testified that after Lifetime’s workers began digging under the house, they discovered a large area where water from sewerage was running under the home. Further investigation revealed
 
 *204
 
 that the plumbing under the house had disintegrated, causing sewerage to create a huge pool under the house. Mr. Howard testified that Ms. Perez was notified of the plumbing issues, but she did not have them repaired until several months after she was notified, causing Lifetime to incur additional expenses to complete the job.
 

 Mr. Howard further testified that although the contract provided for sand to be pumped under the house after it was raised, this could not be done because the area under the house had been filled with dirt and there was no room for sand to be |4pumped underneath. He also stated that it was not necessary, and that failure to pump sand under the house did not render the job “incomplete.”
 

 The project manager for the job, Don Carr, also testified at trial. He testified regarding the plumbing issues under the house and the work performed. He agreed with Mr. Howard that pumping sand under the house was not necessary. Mr. Carr stated that the house would not settle, because pilings were driven under it and the house was resting on the new pilings. He also stated that the sand that is usually used is just filtered dirt and that they typically pack the dirt under the house “pretty hard.”
 

 Maria Perez testified that she is the owner of the house at 3429-31 Florida Avenue and she contracted with Lifetime to have the house leveled. She stated that she did not pay the final $13,300 to Lifetime, because she did not believe that the work was completed. She testified that the house was not leveled correctly, holes around the house were not filled, and sand was not pumped under the house after it was raised. She also asserted that an engineer did not inspect the work while it was being done, as provided for in the contract. Ms. Perez testified that she never had plumbing problems before Lifetime began its work and that her house now had numerous holes and cracks, and it was “broken completely” and destroyed by Lifetime. Ms. Perez further stated that Mr. Howard did not tell her that extra expenses were incurred due to the plumbing problems and she did not ask Lifetime to incur additional expenses.
 

 During trial, several exhibits were admitted into evidence, including photographs and thi’ee brief reports of Lifetime’s expert engineer, Robert Anderson.
 

 On September 11, 2008, the trial judge rendered a judgment in favor of Lifetime and against Ms. Perez for $13,325, plus judicial interest, costs, and [¡-,attorney fees, and he issued reasons for judgment as well. Notice of judgment was mailed on September 30, 2008. On October 9, 2008, Ms. Perez filed a Motion to Annul Judgment and/or Motion for New Trial.
 

 On January 13, 2009, the Motion for New Trial came for hearing before the trial judge, who had been newly elected to the court and was not the original judge who heard the trial and rendered the September 11, 2008 judgment. At the conclusion of the hearing, the trial judge denied Ms. Perez’s motion. A written judgment denying the motion was signed by the trial judge on March 9, 2009. Ms. Perez appeals the September 11, 2008 and March 9, 2009 judgments.
 

 LAW AND DISCUSSION
 

 On appeal, Ms. Perez contends that the trial court erred by allowing three reports of Lifetime’s expert engineer, Robert Anderson, into evidence. She claims that the reports were hearsay, that a proper foundation was not laid for their introduction, and that they were timely objected to. She further asserts that the trial court only allowed the reports into evidence because Lifetime indicated that Mr. Anderson would be deposed and subject to cross-examination after the February 11, 2008 trial. We must note that Ms. Perez did not cite any statutory authority or
 
 *205
 
 caselaw in support of her claims. While we do not condone the filing of an appellant brief without citation of the applicable law, we address her claims nonetheless.
 

 Although Mr. Anderson’s first report, dated January 9, 2001, was not timely objected to at trial and thus, was properly admitted, the remaining two reports, dated September 19, 2001 and October 11, 2001, were timely objected to. We agree with Ms. Perez that these two reports are hearsay and were improperly admitted.
 

 |rvLSA-C.E. art. 803 provides that hearsay is not admissible, except as otherwise provided by the Louisiana Code of Evidence or other legislation. Lifetime did not show that the reports entered into evidence were permitted under any exception to the hearsay rule. Further, when counsel for Ms. Perez objected to the admission of Mr. Anderson’s reports, counsel for Lifetime indicated that Mr. Anderson’s deposition would be taken after trial. However, after trial, in his letters to counsel for Ms. Perez, he indicated that he did not wish to take Mr. Anderson’s deposition. In his June 4, 2008 letter to the court’s law clerk, counsel for Lifetime indicated that he did not depose Mr. Anderson “since his expert report was already entered into evidence at trial.”
 

 We cannot say that the erroneous admission into evidence of Robert Anderson’s second and third reports was harmless. The reasons for judgment issued by the trial judge show that he relied heavily on Robert Anderson’s reports. In his reasons for judgment, the trial judge specifically mentioned that Ms. Perez did not present any testimony, either at trial or via deposition, of a professional engineer who could oppose the testimony of Mr. Anderson that some of the problems with the house had to do with its original construction rather than the work performed by Lifetime.
 

 Appellate courts review the correctness of the judgment, rather than the reasons for the underlying judgment. LSA-C.C.P. arts. 1841 and 1917;
 
 Schurr v. O’Dwyer,
 
 09-24, p. 4 (La.App. 5 Cir. 9/3/09), 22 So.3d 959, 960. Even though the trial court’s reasons for judgment form no part of the judgment from which appeals are taken, they can define the principles on which the court is deciding a case.
 
 Id.
 
 In the instant case, the reasons for judgment clearly demonstrate that the trial court’s judgment was largely based on the expert reports that were improperly admitted.
 

 | 7A1so, on appeal, Ms. Perez argues that the trial court erred in denying her Motion for New Trial, because she was denied due process of law. Ms. Perez asserts that at the end of trial, the trial judge left the case open to allow the parties to take the depositions of her expert, Michael Gertler, and Lifetime’s expert, Robert Anderson, and he informed the parties that they would be allowed to submit memoranda and present oral argument thereafter before the case would be considered submitted. However, Ms. Perez contends that the trial judge issued his September 11, 2008 judgment prior to the submission of Mr. Gertler’s deposition, post-trial memoranda, and further argument, which deprived her of due process of law.
 

 The transcript of the proceedings shows that at the conclusion of trial, counsel for Ms. Perez requested that the trial court allow the case to remain open in order for the depositions of Ms. Perez’s expert, Michael Gertler, and Lifetime’s expert, Robert Anderson, to be taken. The trial judge ordered that the case remain open and allowed the parties 60 days to take the depositions. The trial judge indicated that after the depositions were transcribed and received, he would allow the parties to contact his clerk and schedule the matter for closing arguments. He also stated that the parties could submit post-trial memo-randa no later than five days before the new hearing date.
 

 
 *206
 
 The record contains a letter dated May 6, 2008 from Lifetime’s counsel to Ms. Perez’s counsel indicating that after Mr. Gertler’s deposition was taken in April 2008, Lifetime decided not to depose its expert, Mr. Anderson. This letter further indicates that Lifetime’s counsel wanted the matter to be submitted to the trial court for a decision. The record also contains a letter dated May 14, 2008 from Lifetime’s counsel to Ms. Perez’s counsel setting forth counsel for Lifetime’s understanding of the trial court order regarding taking depositions, submitting | smemoranda, and submitting the matter for decision. It further sets forth a proposed agreement from Lifetime’s counsel to Ms. Perez’s counsel, indicating that Mr. Anderson’s deposition would not be taken, that the parties would not submit further memoranda or oral arguments, that Mr. Gertler’s deposition would be submitted no later than May 16, 2008, with the court to disregard the portions of his testimony that were validly objected to, and that the matter was considered submitted for a decision. Although there is a signature line at the bottom of this letter to indicate that counsel for Ms. Perez was in agreement, the letter was not in fact signed by counsel for Ms. Perez.
 

 The record also contains a letter dated May 27, 2008 from Lifetime’s counsel to Ms. Perez’s counsel indicating that it was “formal notice” that he would let the trial court know by May 30, 2008 that the terms in the May 14, 2008 letter were agreed to unless he heard from Ms. Perez’s counsel by that time. Finally, the record contains a letter dated June 4, 2008 from Lifetime’s counsel to the court’s law clerk setting forth the steps he had taken to conclude the case, indicating that he had not received any objection to his proposed agreement by counsel for Ms. Perez, and asking the court to consider the matter submitted.
 

 Thereafter, on September 11, 2008, the trial judge issued a judgment in favor of Lifetime and against Ms. Perez for $13,325, plus judicial interest, costs, and attorney fees. In the judgment, the trial judge stated:
 

 After trial the parties were allowed 60 days to conduct further depositions to be submitted to the Court. By May 16, 2008, as agreed by the parties, defendant was to submit any depositions she felt necessary to the Court’s consideration. As of June 4, 2008, nothing had been received, and the matter was considered submitted by agreement of the parties.
 

 Although the trial judge indicated that the parties agreed to submit the matter, there is no evidence in the record that the parties agreed that the depositions |9were to be submitted as of May 16, 2008, or that the case was submitted for a decision.
 

 According to the LSA-C.C.P. art. 1973, a new trial “may be granted in any case if there is good ground therefor.” In reviewing the trial court’s denial of a motion for new trial, an appellate court may not disturb the trial court’s decision unless there has been a clear abuse of discretion.
 
 Warner v. Carimi Law Firm,
 
 98-613, p. 10 (La.App. 5 Cir. 12/16/98), 725 So.2d 592, 597,
 
 writ
 
 denied, 99-466 (La.4/1/99), 742 So.2d 560.
 

 In the instant case, it appears from the arguments of counsel at the Motion for New Trial hearing and the letters in the record that Lifetime’s counsel attempted several times to consult with counsel for Ms. Perez in order to have the matter submitted for decision. We agree with Lifetime’s counsel that the problems regarding submitting the matter for decision would likely have been avoided if Ms. Perez’s counsel had submitted Mr. Gertler’s deposition and taken steps to conclude the case within a reasonable amount of time.
 
 *207
 
 When the trial judge granted the parties 60 days to take the depositions and told counsel for each side that they could contact the clerk and come back to argue the case “as soon as you all get that done,” he undoubtedly expected submission of the case within a reasonable time after counsel received the transcribed deposition(s). At the hearing on the Motion for New Trial, counsel for Ms. Perez stated that he received the deposition transcript in late May or early June 2008, yet he did not submit it to the court before the September 11, 2008 judgment was rendered. Neither party obtained an order re-setting the matter for trial or ordering submission of the case by a specific date.
 

 A court inherently possesses all of the power necessary for the exercise of its jurisdiction, even though not granted expressly by law. LSA-C.C.P. art. 191. | ^Furthermore, a trial judge has wide discretion in controlling his docket and in case management.
 
 Crawford v. City of New Orleans,
 
 01-802, p. 4 (La.App. 4 Cir. 1/28/02), 807 So.2d 1054, 1056. In ordinary circumstances, we would agree that the trial judge- has the discretion to consider a case submitted if he allows the parties additional time to submit testimony or exhibits and a reasonable time passes without such a submission. However, considering the erroneous admission into evidence of Lifetime’s second and third expert reports along with the other particular circumstances of this ease, we find that a new trial should have been granted.
 

 The trial judge’s reasons for judgment clearly show that he relied heavily on the inadmissible expert reports by Robert Anderson and that these reports were admitted over counsel for Ms. Perez’s objections after counsel for Lifetime informed the court that Mr. Anderson’s deposition would be taken after trial. Mr. Anderson’s deposition was not subsequently taken. The fact that these reports were erroneously admitted, along with the circumstances regarding submission of the case for a decision, constitutes good cause for a new trial. Thus, we find that the trial judge abused his discretion in denying Ms. Perez’s Motion for New Trial, and we reverse this decision.
 

 Considering our determination that there is good cause for a new trial, it is unnecessary to consider the remaining arguments set forth by Ms. Perez on appeal.
 

 DECREE
 

 For the foregoing reasons, we reverse the March 9, 2009 judgment denying Ms. Perez’s Motion for New Trial, vacate the September 11, 2008 judgment, and remand this case for a new trial and further proceedings consistent with this opinion.
 

 REVERSED, VACATED, AND REMANDED.