**J. Anthony ARENA**

v.

**SCHULMAN, LeROY & BENNETT.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

April 27, 2006 Session.

Oct. 27, 2006.

Timothy L. Warnock and Amy E. Neff,
Nashville, Tennessee, for the appellant, J.
Anthony Arena.

Patrick A. Ruth, Nashville, Tennessee, for the appellee, Schulman, LeRoy & Bennett, P.C.

## OPINION

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., and JERRY SCOTT, SR. J., joined.

An attorney who voluntarily withdrew from a law firm appeals from the trial court's decision upholding the validity of an agreement that required him to share fifty percent of the contingency fees he earned on files he took from the firm if he maintained a practice in Davidson County after withdrawing from the firm. The attorney challenges the agreement on the grounds that it violates Tennessee's public policy against restraints on the practice of law. The firm argues that the agreement does not restrict the attorney's right to practice law. We have concluded the agreement contains a significant economic disincentive to practice law in Davidson County, which is an impermissible restraint on the practice of law. We therefore reverse.

J. Anthony Arena joined the well established and respected law firm of Schulman, LeRoy, and Bennett, P.C. as a new and relatively inexperienced associate in August of 1991. As Arena's practice grew, he developed a relatively significant worker's compensation practice as well as a plaintiff's personal injury practice for which the compensation for his representation was on a contingent fee basis. Most of Arena's clients were employees of the Saturn Corporation in Maury County, Tennessee.

Arena became a shareholder in the firm in 1995. At the time Arena became a shareholder there was no shareholders' agreement; however, in 1999, all of the shareholders of the firm entered into a Shareholders' Agreement, as well as individual employment agreements, which established, *inter alia*, the billing requirements and the compensation for shareholders.

The Shareholders' Agreement provided for the process that was to be followed in the event a shareholder voluntarily left the firm. The relevant provisions are set forth in paragraph 7 of the agreement:

7. *Resignation of a SHAREHOLDER, Retirement of a SHAREHOLDER or Termination of a SHAREHOLDER.*

(A) Retirement of a SHAREHOLDER shall occur when a SHAREHOLDER voluntarily ceases to practice law on a full time basis. . . . [1]

(B) A terminating SHAREHOLDER is defined as a SHAREHOLDER who voluntarily terminates his employment with SL & B and continues in private practice or re-enters private practice within three (3) years in Davidson County or any of the surrounding counties or who is terminated by SL & B with or without cause.

(I) *Hourly Fee Cases.* . . .

(ii) *Contingency Fee Cases.* . . . On contingency fee files or potential contingence [sic] fee cases where the prospective client or its agent has contacted the terminating SHAREHOLDER prior to the effective date of termination, the terminating SHAREHOLDER shall pay to SL & B fifty (50%) per cent of all fees received from such files or matter

---

1. The provisions of section (A) only pertain to a shareholder who "retires" and does not within a period of three years re-enter the private practice with another firm that has offices in Davidson County or a contiguous county.

which the terminating or terminated SHAREHOLDER takes with him. On files which the terminating or terminated SHAREHOLDER leaves with SL & B, the SHAREHOLDER shall receive no part of the fee but shall pay to SL & B on the effective date of his termination 100% of the costs and expenses advanced by SL & B.

Arena voluntarily terminated his employment with the firm in August of 2002.[2] Since he voluntarily terminated his employment and took contingency fee files with him that had been opened while with the firm, Arena recognized the provisions of paragraph 7(B) would apply if he opened an office in Davidson or a contiguous county.[3] Because of the geographical implications of paragraph 7(B), Arena considered maintaining his practice in Maury County, where most of his Saturn employee clients worked. After consulting with some of his clients, many of whom suggested to him that they preferred to have an attorney from Nashville, Arena opened his new law office in Nashville, Davidson County. Thereafter, and pursuant to paragraph 7(B), Arena began sending payments to the firm based upon the fees he subsequently collected from files that he took with him when he left the firm.

Some time later, Arena reconsidered the merits of paragraph 7(B) and consulted with counsel as to whether he was obligated to remit the fees to the firm. After consulting with counsel, Arena decided paragraph 7(B) was contrary to the Supreme Court's prohibition of the restraint of the practice of law and ceased making payments to the firm. As a consequence, Arena filed this action seeking a declaration that paragraph 7(B) of the Shareholders' Agreement was invalid and unenforceable. The firm responded to the Complaint with a Counter Claim contending Arena was in breach of the Shareholders' Agreement. The firm also sought an accounting of the fees owed to the firm.

Following a bench trial, the trial court determined paragraph 7(B) of the Shareholders' Agreement was valid and enforceable, and appointed a special master who was charged with the task of determining which files Arena took with him from the firm and what fees were owed to the firm.

Arena appeals challenging the validity of paragraph 7(B) of the Shareholders' Agreement. He further argues that even if the provision is valid, he is no longer bound by the agreement because the firm committed the first breach by not adhering to the billing procedures and payment schedules set forth in the agreement.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is *de novo*, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn.Ct.App.2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn.Ct.App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn.Ct.App.1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must

---

**2.** Upon his withdrawal, Arena reimbursed the firm for all out-of-pocket costs, approximately $13,000.

**3.** The parties were in agreement that the term "surrounding" county, as used in paragraph 7(B) meant a county that was "contiguous" to Davidson County.

conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks,* 992 S.W.2d 403, 405 (Tenn.1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young,* 950 S.W.2d 956, 959 (Tenn.1997); *B & G Constr., Inc. v. Polk,* 37 S.W.3d 462, 465 (Tenn.Ct.App. 2000). Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal–Mart Stores, Inc.,* 8 S.W.3d 625, 628 (Tenn.1999).

## ANALYSIS

■ The controlling issue is whether paragraph 7(B) of the Shareholders' Agreement violates the prohibition on restrictions on the right to practice law. Arena has characterized the provision as an impermissible "forfeiture for competition" clause. The law firm argues that it is merely a "recoupment of costs incurred" by the firm while Arena was employed. We have concluded the economic disincentives in paragraph 7(B) of the Shareholders' Agreement constitute an impermissible restraint on the practice of law.

The ethical standards relating to the practice of law are set forth in the Rules of Professional Conduct, which went into effect on March 1, 2003. The rule most relevant to the issue presented is Rule 5.6, entitled "RESTRICTIONS ON THE RIGHT TO PRACTICE." Rule 5.6 provides:

A lawyer shall not participate in offering or making:

(a) a partnership or employment agreement that restricts the right of a lawyer to practice after termination of the relationship, except with respect to an agreement concerning benefits upon retirement; or

(b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.

The Official Comments to Rule 5.6 are also enlightening. They provide:

[1] An agreement restricting the right of a lawyer to practice after leaving a firm or organizational employer not only limits the lawyer's professional autonomy, but it also limits the freedom of clients to choose a lawyer. Paragraph (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm or organizational employer.

[2] Paragraph (b) prohibits a lawyer from agreeing not to represent other persons in connection with settling a claim on behalf of a client.

[3] This Rule does not apply to prohibit restrictions that may be included in the terms of the sale of a law practice pursuant to RPC 1.17.

Arena's separation from the firm was not a retirement, as contemplated in Rule 5.6(a), and thus, the matters at issue do not come within the exception to Rule 5.6. Moreover, Arena did not sell his law practice as contemplated in Rule 1.17. Thus, the matters at issue do not come within the purview of any of the exceptions to the Supreme Court's prohibition on restrictions on the right to practice law.

The premier case in Tennessee on the issue of whether an agreement constitutes an impermissible restraint on the practice of law is *Spiegel v. Thomas, Mann, & Smith, P.C.,* 811 S.W.2d 528, 530 (Tenn. 1991).[4] *Spiegel* stands for the proposition

---

**4.** Although *Spiegel* was based upon a previous code of conduct, the Code of Professional Responsibility which was superseded by the Rules of Professional Conduct, effective

that restraints which infringe on a lawyer's responsibility to "assist the legal profession in fulfilling its duty to make legal counsel available" are against public policy. *Spiegel*, 811 S.W.2d at 530 (citations omitted).

Like here, the dispute in *Spiegel* pertained to a law firm's stockholder agreement. The *Spiegel* agreement provided for the payment of deferred compensation consisting of income accrued but not yet distributed "to compensate for what would traditionally be considered equity in the firm." *Id.* at 528. The deferred compensation was payable to attorneys (shareholders) leaving the employ of the law firm *unless the withdrawing attorney continued in the practice of law.* (emphasis added) *Id.* If the withdrawing attorney continued to practice law, he or she forfeited the deferred compensation.

As the law firm argues here, the law firm in *Spiegel* argued that the stockholders' agreement did nothing to infringe on the availability of counsel from which the public can choose and does not restrict the right of a withdrawing shareholder to practice law. Although that is correct, the *Spiegel* stockholders' agreement imposed a significant financial disincentive should the withdrawing attorney chose to continue in the practice of law. That disincentive was the forfeiture of the withdrawing attorney's deferred compensation, the equity in the firm. Noting the financial disincentive was tied directly to a restraint on the practice of law, the *Spiegel* court rejected the law firm's argument and found the offending provision of the stockholders' agreement invalid.

The same argument was rejected by the New York Court of Appeals in *Cohen v. Lord, Day & Lord,* 75 N.Y.2d 95, 551 N.Y.S.2d 157, 550 N.E.2d 410 (Ct.App. 1989):

> We hold that while the provision in question does not expressly or completely prohibit a withdrawing partner from engaging in the practice of law, the significant monetary penalty it exacts, if the withdrawing partner practices competitively with the former firm, constitutes an impermissible restriction on the practice of law. The forfeiture-for-competition provision would functionally and realistically discourage and foreclose a withdrawing partner from serving clients who might wish to continue to be represented by the withdrawing lawyer and would thus interfere with the clients' choice of counsel.

*Spiegel*, 811 S.W.2d at 530 (quoting *Cohen,* 551 N.Y.S.2d at 158, 550 N.E.2d at 411).

It must be noted that *Spiegel* was decided based in part on a code of professional conduct that has been superseded. The current rules, the Rules of Professional Conduct, which went into effect on March 1, 2003, superseded the rules in effect when *Spiegel* was decided. The relevant rule presently in effect, Rule 5.6 of the Rules of Professional Conduct, is substantially the same as the relevant rule of the Code of Professional Responsibility in effect when *Spiegel* was decided. That rule, entitled Agreements Restricting the Practice of a Lawyer, provided:

> (A) A lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits.

March 1, 2003, we find *Spiegel* is just as persuasive and controlling today as it was when it was decided.

(B) In connection with the settlement of a controversy or suit, a lawyer shall not enter into an agreement that restricts his right to practice law.

Disciplinary Rule 2–108, Code of Professional Responsibility (repealed March 1, 2003). Because the current rule is substantially the same as before, we find the reasoning and holding in *Spiegel* applicable to the matters at issue. Moreover, since the adoption of the Rules of Professional Conduct, the Tennessee Supreme Court has extended the reasoning in *Spiegel* to the medical profession.[5] *See Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 682 (Tenn.2005).

Although there are facts that distinguish the case at bar from *Spiegel* and *Cohen*, the reasoning in the two opinions is both applicable and compelling. The relevant and material fact which these cases have in common is there is a significant financial disincentive tied to practicing law in competition with the law firm. Like the courts in *Spiegel* and *Cohen*, we find the connection of the financial disincentive to the practice of law constitutes, whether intended or not, an impermissible restraint on the practice of law.[6]

▇ It is not impermissible for a law firm to make an economic claim to a client's file that originated while the withdrawing attorney was with the firm. *See*

*generally Haynes v. Dalton*, 848 S.W.2d 664 (Tenn.Ct.App.1993) (permitting a law firm to recover a portion of fees collected by a lawyer after leaving the firm who worked on the files while with the firm and continued to work on the files after he left the firm). The claim may be based upon an express or implied contract. *Id.* at 665 (citing *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 53–4, 407 S.W.2d 150, 154 (1966) and *Estate of Atkinson v. Allied Fence*, 746 S.W.2d 709, 711 (Tenn.Ct.App.1987)).

The problem with the agreement at issue is that it waived any claim to the files Arena took with him unless Arena chose to stay in an area that would put him in competition with the firm, Davidson County or a contiguous county. As the Agreement clearly provided, Arena could continue to practice law without having to share any fees with the law firm unless he chose to do so in Davidson County, where the law firm was located, or a contiguous county. The Shareholders' Agreement, therefore, tells us the law firm placed no economic significance on the value of the files and that it made no claim to the fees to be earned thereon, provided Arena left the territory, so-to-speak. Thus, if Arena continued in private practice just south of the Williamson County line, on the Maury County side of the line, the firm made no

---

5. Since the adoption of the Rules of Professional Conduct, the Tennessee Supreme Court extended the public policy rationale set forth in *Spiegel's* holding to covenants not to compete in physicians' contracts. The Court compared the practice of law and medicine by stating,

> we see no practical difference between the practice of law and the practice of medicine. Both professions involve a public interest generally not present in commercial contexts. Both entail a duty on the part of practitioners to make their services available to the public. Also, both are marked by a relationship between the professional

and the patient or client that goes well beyond merely providing goods or services. These relationships are "consensual, highly fiduciary and peculiarly dependent on the patient's or client's trust and confidence in the physician consulted or the attorney retained."

*Murfreesboro Med. Clinic, P.A.*, 166 S.W.3d at 683 (quoting *Karlin v. Weinberg*, 77 N.J. 408, 390 A.2d 1161, 1171 (1978)).

6. We wish to acknowledge that the law firm insists it did not intend for paragraph 7(B) to constitute a restraint on the practice of law and accept the law firm's declarations as true.

claim to the contingent fees; however, if he continued in private practice on the north side of the same county line, he owed the law firm fifty percent of all fees earned on the files he took with him.

Although the restraint on the practice of law was not the law firm's intent, the effect of paragraph 7(B) of the Shareholders' Agreement was a financial disincentive for Arena to compete with the law firm in and around Davidson County. Such a disincentive, whether intended or not, is in violation of Rule 5.6 and the public policy of this state, and is therefore unenforceable.

 As an alternative to its contract claim, the law firm contends it is entitled to quantum meruit relief if we found paragraph 7(B) unenforceable. It is a general rule of law that quantum meruit relief, based upon an implied contract or quasi-contract, will not be imposed in circumstances where an express contract or agreement exists. *See Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342, 349 (Tenn.Ct.App.1994); *Fletcher Realty, Inc. v. Hayslope Properties*, 712 S.W.2d 478, 481–482 (Tenn.Ct.App.1986). Therefore, the law firm's quantum meruit claim cannot prevail if the parties had an express agreement as to contingent fees. To make this determination, we look to the agreement and the intentions of the parties to determine whether there was an agreement as to contingent fees in the event Arena did not violate the now defunct restraint on maintaining a practice in Davidson County.

The Shareholders' Agreement provides, in paragraph 13, that if any provision of the agreement is found to be unenforceable, the remaining provisions of the agreement shall not be affected. The Shareholders' Agreement addressed in significant detail the fees it was entitled to recover following the departure of a terminating shareholder. But for the now defunct paragraph 7(B)(ii), the firm made no claim to any portion of contingent fees earned by a terminating shareholder subsequent to leaving the firm. We note, based on the testimony of members of the law firm, that the firm did not intend to claim any portion of the contingent fees but for the provision in paragraph 7(B)(ii). One of the senior attorneys of the law firm testified that had Arena opened his law office in Maury County the law firm would not have been entitled to recoup a portion of the contingent fees. That same attorney answered in the affirmative when asked whether the only event entitling the firm to 50% of the fees would be Arena's continuing to practice in Davidson County or a contiguous county. Another member of the firm testified that the thinking behind the provision, referring to paragraph 7(B)(ii), was that if a shareholder left the firm and moved away, to Knoxville for example, he would not take contingent files with him; thus, contingent fees from those files would have remained with the firm.

It is evident from the Shareholders' Agreement and the testimony of members of the law firm that the law firm agreed to forego any claim to contingent fees in the event a "terminating" shareholder continued in the private practice of law an appropriate distance from Davidson County. Finding the parties had an agreement that the law firm would not be entitled to a portion of the contingent fees, but for the unenforceable provision, the law firm is not entitled to quantum meruit relief.

### In Conclusion

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this

opinion. Costs of appeal are assessed against Schulman, LeRoy, & Bennett, P.C.