**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

SEATTLE TRUCK LAW, PLLC, a
Washington Professional Limited
Liability Company,

                   Respondent,

    v.

JAMES BANKS, and the marital
community composed thereof,
Washington State residents,

                 Appellants.

No. 84337-1-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — Seattle Truck Law, PLLC (STL) sued its former employee, attorney James Banks, seeking a split of contingent fees under an employment agreement. The trial court granted partial summary judgment for STL. On appeal, Banks argues that the trial court erred by granting summary judgment for STL because the employment agreement violates Rule of Professional Conduct (RPC) 5.6. Banks also argues that the trial court erred in denying summary judgment on his claim of breach of contract.

We affirm.

I

STL is a personal injury law firm that specializes in large truck and bus crash cases. Morgan Adams is the principal owner of STL. In November 2017, STL hired Banks. Banks signed an employment agreement with STL (agreement). Under the agreement, Banks would receive 50 percent of the attorney fees earned on all car crash cases he worked, no matter who initiated the case, but Banks would "not have a set fee, if any, on trucking cases as the car wreck cases [were] expected to compensate [Banks] for any time spent on the trucking cases."

The agreement also contained provisions in the event that Banks separated from STL. It stated, in part:

> On contingency files opened at the office, that you take with you if you leave, you agree you will repay all costs and expenses owed to the firm within three (3) months of the date you leave. You further agree to remit fifty percent (50%) of any attorney fees received on those files to the firm for the first year from the date you leave and forty percent (40%) the second year, and thereafter.

The agreement also stated:

> Should you leave, a full accounting shall be made at the settlement or resolution of all files in which the firm has an interest on the first of each month. A copy of the settlement sheet, for any contingency case settled the prior month, shall be provided with the accounting. A current update on all open files, in which I have an interest, shall be provided at least quarterly, four (4) times a year, on January 1st, April 1st, July 1st, and October 1st until all cases are resolved.

Further, under the agreement, Banks had no claim to files left with STL after his departure.

Banks began employment with STL on January 1, 2018. Two years later, on January 1, 2020, STL and Banks executed an addendum to the agreement. Under the

addendum, for cases credited to Banks, Banks would receive 35 percent of the attorney fees earned for the first $500,000 and 40 percent of the attorney fees earned in excess of $500,000. The addendum reiterated that there was no set fee division, "You will not have a set fee on cases. Fee splits will be made based on overall work on the files, origination, and at Seattle Truck Law's discretion as they have been in the past." The addendum did not alter the provisions addressing Banks's handling of files following his separation from STL.

Banks terminated his employment with STL on December 31, 2020. Banks notified clients in writing that they could continue to be represented by STL or by Banks at his new solo practice. Eight clients chose to have Banks represent them going forward.

On November 29, 2021, after Banks settled several cases that originated with STL and Banks refused to split the fees with STL as required by the agreement, STL sued Banks for breach of contract, quantum meruit, and an accounting. Banks's counterclaim asserted claims for wrongful withholding of wages under RCW 49.48 and 49.52; failure to pay minimum wage pursuant to RCW 49.46 and 49.52; wrongful termination through constructive discharge; quantum meruit; and breach of contract.

Both STL and Banks moved for summary judgment. The trial court denied Banks's motion for summary judgment. The trial court found that the fee-splitting provision:

> does not restrict Mr. Banks's ability to practice law and continue working on cases. This provision does not constitute a time or geographical restriction on Mr. Banks and is not a non-competition provision. Fee splits between a law firm and an employee-attorney are not uncommon. RPC 5.6 could have included a section prohibiting such an arrangement, and

the Rules of Professional Conduct drafters chose not to include such a prohibition. I find that this provision does not violate RPC 5.6.

The trial court found that the agreement includes "clear and unequivocal language" about the payment of fees and found that STL did not wrongfully withhold wages owed to Banks. As a result, the trial court granted STL's motion for summary judgment on its breach of contract claim.

The parties then agreed to a stipulation for entry of summary judgment dismissing all remaining claims and counterclaims. STL moved for entry of judgment against Banks. On September 12, 2022, the trial court granted judgment for $200,197.80, $23,806.45 in interest, and $1,092.00 in costs and attorney fees.

Banks appeals.

II

We review orders on summary judgment de novo engaging in the same inquiry as the trial court. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Folsom, 135 Wn.2d at 663. The party moving for summary judgment carries the burden to show that there are no genuine issues of material fact and all reasonable inferences must be resolved against the moving party. Folsom, 135 Wn.2d at 663. "The motion should be granted only if, from all the evidence, a reasonable person could reach only one conclusion." Folsom,

135 Wn.2d at 663. We examine "all the evidence presented to the trial court." Folsom, 135 Wn.2d at 663.[1]

A

Banks appeals the trial court's order concluding that the agreement is an enforceable contract. Banks argues that the fee-splitting provision on contingency fee cases in the agreement violates RPC 5.6(a). As a result, Banks asserts, the agreement's violation of RPC 5.6(a) renders it unenforceable as against public policy.

1

To begin, STL asserts that the RPCs do not impact the parties' agreement because the RPCs are intended to govern disciplinary proceedings and may not be used as a mechanism for an attorney to avoid contractual obligations. We disagree.

Our Supreme Court has held that in some cases violations of the RPCs in the formation of a contract may render that contract unenforceable as violative of public policy. LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d 48, 85, 331 P.3d 1147 (2014). However:

> Just because the RPCs can be a valid source of public policy does not mean that every violation of every RPC that relates to a contract renders the contract unenforceable. The underlying inquiry in determining whether a contract is unenforceable because it violates public policy is whether the contract itself is injurious to the public. While all RPC violations are in some way injurious to the public, not all RPC violations will render any related contract injurious to the public.

LK Operating, 181 Wn.2d at 87 (emphasis added). The court "explicitly recognize[d] that a contract is not automatically unenforceable based solely on the fact that it has

---

[1] STL asks this court not to consider the declaration of Arthur Lachman. STL moved to strike the declaration in the trial court but the court did not consider the motion. STL has not assigned error to that decision by the trial court. Because the declaration was presented to the trial court, we consider it.

some connection to some RPC violation." LK Operating, 181 Wn.2d at 88. This would "ignore the clear admonishment that 'the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.'" LK Operating, 181 Wn.2d at 88. The court emphasized, "[w]e do not purport to set out any all-encompassing rule for how violation of any RPC in connection with a contract might affect that contract's enforceability." LK Operating, 181 Wn.2d at 89-90. "Whether a given set of facts establish an RPC violation is a question of law subject to de novo review." LK Operating, 181 Wn.2d at 72.

Thus, the questions we consider are whether the agreement violated RPC 5.6, and, if so, does the violation render the agreement unenforceable as against public policy?

2

Banks contends that the agreement's provision calling for a 50 percent split in the first year and a 40 percent split of contingent fees thereafter for files opened at STL that Banks takes with him violates RPC 5.6 because it serves as a financial disincentive to a departing lawyer—thus restricting the lawyer's future practice, as well as the client's right to choose a lawyer. We disagree.

RPC 5.6, titled Restrictions on Right to Practice, provides in part:

A lawyer shall not participate in offering or making:

(a) a partnership, shareholders, operating, employment, or other similar type of agreement that restricts the rights of a lawyer or an LLLT [a limited license legal technician] to practice after termination of the relationship, except an agreement concerning benefits upon retirement

The comments explain the policy behind the rule:

> [1] An agreement restricting the right of lawyers to practice after leaving a firm not only limits their professional autonomy but also limits the freedom of clients to choose a lawyer.  Paragraph (a) prohibits such agreements except for restrictions incident to provisions concerning retirement benefits for service with the firm.

RPC 5.6, cmt. [1].

Washington's RPC 5.6 is patterned on the American Bar Association (ABA) Model Rule of Professional Conduct 5.6.[2] The ABA rule was adopted as part of the original set of Model Rules in 1983.  See ABA, A LEGISLATIVE HISTORY: THE DEVELOPMENT OF THE ABA MODEL RULES OF PROFESSIONAL CONDUCT, 1982-2005 at Rule 5.6 (2006) (A LEGISLATIVE HISTORY).  ABA Model Rule 5.6 was amended in 2000 to broaden the scope beyond partnership agreements.[3]  See A LEGISLATIVE HISTORY: supra, at Rule 5.6.  But otherwise the rule has not undergone substantive changes.

To date, Washington courts have not considered RPC 5.6.  In addition, Washington State Bar Association (WSBA) advisory opinions have dealt with more direct restrictions on the right to practice in contrast to the fee-splitting provision in this case.  See WSBA Rules of Pro. Conduct Comm., Advisory Opinion 2118 (2006) (finding noncompete provisions prohibiting attorney from contacting or soliciting clients or potential clients of the firm across several geographic regions for two years following termination violated RPC 5.6(a));[4] WSBA Rules of Pro. Conduct Comm., Advisory Opinion 1998 (2002) (finding a provision that prevents a terminated lawyer from

---

[2] But Washington's RPC 5.6 also applies to LLLTs.
[3] Before 2000, the model rule stated:
A lawyer shall not participate in offering or making:
(a) A partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement.
[4] https://ao.wsba.org/print.aspx?ID=1557

soliciting, hiring, or recruiting other lawyers from prior firm violates RPC 5.6(a));[5] WSBA Rules of Pro. Conduct Comm., Advisory Opinion 1446 (1991) (finding buy/sell agreement conditioning law firm's obligation to purchase shareholder's interest on covenant not to compete violates RPC 5.6);[6] WSBA Rules of Pro. Conduct Comm., Advisory Opinion 927 (1985) (finding proposed agreement in which the purchase price of a departing shareholder's stock would depend on whether the departing stockholder signed a covenant not to compete violates RPC 5.6(a)).[7]

The prevailing view outside Washington is that the purpose of RPC 5.6 is "to ensure the freedom of clients to select counsel of their choice, despite its wording in terms of the lawyer's right to practice." Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 18, 607 A.2d 142 (1992). The rule is "designed to serve the public interest in maximum access to lawyers." Jacob, 128 N.J. at 18; see also Cohen v. Lord, Day & Lord, 75 N.Y.2d 95, 550 N.E.2d 410, 411, 551 N.Y.S.2d 157 (1989) ("The purpose of the rule is to ensure that the public has the choice of counsel."); Law Offs. of Ronald J. Palagi, PC v. Howard, 275 Neb. 334, 349, 747 N.W.2d 1 (2008) ("[T]he client's freedom of choice is the paramount interest the ethics rules attempt to serve.").

Direct restrictive covenants are almost universally struck down as violative of RPC 5.6. See Ipsos-Insight, LLC v. Gessel, 547 F. Supp. 3d 367 (S.D.N.Y. 2021) (holding noncompete agreement between in-house counsel and company was unenforceable as a matter of public policy based on violation of RPC 5.6(a)); Feiner & Lavy, PC v. Zohar, 195 A.D.3d 411, 150 N.Y.S.3d 238 (2021) (holding an employment

---

[5] https://ao.wsba.org/print.aspx?ID=1241
[6] https://ao.wsba.org/print.aspx?ID=526
[7] https://ao.wsba.org/print.aspx?ID=38

agreement prohibiting associate from practicing within 90 miles of New York City or in Israeli community for 3 years after departure from firm was void and unenforceable under RPC 5.6).

Financial disincentive provisions may also be unenforceable as against public policy. For instance, in Cohen, the court considered a partnership agreement with a forfeiture provision through which departing partners who continued to practice in a described geographical area relinquished their rights to profits earned before departure. 550 N.E.2d at 410. The court held, "[t]he forfeiture-for-competition provision would functionally and realistically discourage and foreclose a withdrawing partner from serving clients who might wish to continue to be represented by the withdrawing lawyer and would thus interfere with the client's choice of counsel." Cohen, 550 N.E.2d at 411. But the court cautioned "against a categorical interpretation or application" of its narrow holding that was specific to the provision before it. Cohen, 550 N.E.2d at 413. See also Gray v. Martin, 63 Or. App. 173, 663 P.2d 1285 (1983) (holding a firm cannot condition a withdrawing partner's right to payment upon his promise not to compete within geographic area); Jacob, 128 N.J. at 14, 22 (holding provision in partnership agreement that barred partners from collecting termination compensation if they continued to represent firm clients or solicited firm attorneys within a year of departure was unenforceable because "indirect restrictions on the practice of law, such as the financial disincentives at issue in this case, likewise violate both the language and the spirit of RPC 5.6").

But the provision at issue in the agreement applies to contingency fee cases opened only while Banks was with STL, not after his departure:

> On contingency files opened at the office, that you take with you if you leave, you agree you will repay all costs and expenses owed to the firm within three (3) months of the date you leave. You further agree to remit fifty percent (50%) of any attorney fees received on those files to the firm for the first year from the date you leave and forty percent (40%) the second year, and thereafter.

Nor did the provision limit Banks's future practice of law—either field of law or geographic area—after he left STL.

Banks relies heavily on Arena v. Schulman, LeRoy & Bennett, 233 S.W.3d 809 (Tenn. Ct. App. 2006), and argues that the provision here is more onerous. In Arena, the Tennessee Court of Appeals considered a shareholder agreement that required a departing shareholder to pay the firm 50 percent of fees received from contingent fee cases if the shareholder continued practicing within the same and surrounding counties. 233 S.W.3d at 810. The court concluded that the economic disincentive constituted an impermissible restraint on the practice of law. Arena, 233 S.W.3d at 812. But the court explained, "[i]t is not impermissible for a law firm to make an economic claim to a client's file that originated while the withdrawing attorney was with the firm." Arena, 233 S.W.3d at 814. The court emphasized, "[t]he problem with the agreement at issue is that it waived any claim to the files Arena took with him unless Arena chose to stay in an area that would put him in competition with the firm . . . [the agreement] therefore, tells us the law firm placed no economic significance on the value of the files and that it made no claim to the fees to be earned thereon, provided Arena left the territory." Arena, 233 S.W.3d at 814 (emphasis added). Thus, the agreement was a direct restrictive covenant on the right to practice.

In response, STL relies on cases that have considered more comparable fee-splitting agreements for contingent fee cases. Of particular relevance is Groen, Laveson, Goldberg & Rubenstone v. Kancher, 362 N.J. Super. 350, 827 A.2d 1163 (App. Div. 2003), where the New Jersey Appellate Division addressed a contingency fee agreement almost identical to this one. In Groen, a partnership agreement provided that contingent fees collected in cases the departing partner took upon withdrawal from the firm would be divided equally between the partnership and the departing partner. 362 N.J. Super. at 352. The court noted there was no showing in the record that the agreement prevented the departing partner from continuing his practice or handling cases that clients wanted him to take from the plaintiff firm. Groen, 362 N.J. Super. at 361. The court found that the agreement did not have the same effect on the client's right to counsel as other cases involving restrictions on the departing attorney's ability to continue the representation of a client and upheld the agreement. Groen, 362 N.J. Super. at 354.

In Barna, Guzy & Steffen, Ltd. v. Beens, 541 N.W.2d 354, 355 (Minn. Ct. App. 1995), the Minnesota Court of Appeals considered a shareholder agreement that required a departing shareholder to pay 50 percent of contingent fees received to the firm for cases that were initiated at the firm. The court held that the agreement did not violate Minnesota's RPCs, including 5.6, noting:

> The situation here is distinguishable from one in which a separation agreement effectively penalizes an attorney for continuing to represent certain clients. Under the shareholder agreement, Beens will still receive 50% of the contingency fee. As the Barna firm points out, the agreement cannot serve as a financial disincentive because Beens would have received less than 50% of the contingency fee if he had remained at the firm.

Barna, 541 N.W.2d at 357. The Barna court also noted that "[i]f such agreements cannot be enforced, law firms will face instability because attorneys will be motivated to leave firms when they receive lucrative contingent fee cases, and attorneys will be encouraged to battle over clients." 541 N.W.2d at 356.

In Warner v. Carimi Law Firm, 98-613 (La. App. 5 Cir. 12/16/98) 725 So. 2d 592, 594, 599, the Louisiana Court of Appeals considered an employment agreement between a lawyer and his former firm requiring the attorney to pay 50 percent of the fees recovered in cases taken from the firm. The Court of Appeals agreed with the trial court's findings:

> Warner has presented no proof that this contract in any way prevented him from representing any client on any file . . . As a matter of fact, quite to the contrary as is evidenced by the record, Warner undertook the representation of every client . . . and brought that case to a successful conclusion. Therefore, this Court concludes that any theoretical impairment of a client's ability to choose the attorney of their choice is simply not borne out by the facts of this case. And from a theoretical point of view, this Court notes that an agreement such as the one herein wherein two attorneys in the same law firm who freely agree to a particular split of a fee at the conclusion of a case if one or the other terminates their employment is actually very conducive to the orderly conduct of practicing law.

Warner, 725 So. 2d at 595. As a result, the Court of Appeals held the contract did not violate the RPCs. Warner, 725 So. 2d at 596.[8]

Unlike in Arena, here, STL placed economic significance on the value of the files, claiming entitlement to a portion of the fees to be earned on any file that Banks took with him. STL did not place a geographical restraint on Banks's ability to practice law or

---

[8] The preceding three states have adopted ABA Model Rule 5.6, with New Jersey maintaining the 1983 version. See CPR POL'Y IMPLEMENTATION COMM., ABA, VARIATIONS OF THE ABA MODEL RULES OF PROFESSIONAL CONDUCT: RULE 5.6 RESTRICTIONS ON RIGHT TO PRACTICE (Sept. 29, 2017), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/mrpc_5_6.pdf.

a restraint on his ability to compete with STL. Instead, STL protected the firm's rights in case the parties terminated their relationship after cases were initiated at the firm. Thus, this case is analogous to Groen, Barna, and Warner.

And as was the case in Barna, the fee-splitting provision entitled Banks to a higher percentage of the contingent fees than he was entitled to as an employee of STL.[9] Thus, the agreement could not serve as a financial disincentive.

While Amici[10] make several broad arguments about the perils of fee-splitting provisions, any theoretical impairment of a client's ability to select the attorney of their choice is not borne out by these facts where Banks represented all eight of the clients who elected to retain him to the successful completion of their cases. Warner, 725 So. 2d at 595. And Amici are incorrect that "little to no work had been done on [these] matters" before Banks's resignation from STL. Indeed, the first case settled within the first six weeks of Banks's departure from STL, five of the cases settled in 2021, while the remaining three settled in 2022.

Banks has not established that this fee-splitting provision violated RPC 5.6. We thus conclude that the trial court did not err by granting STL summary judgment as a matter of law.[11]

---

[9] Under the addendum, Banks was entitled to 35 percent for the first $500,000 of attorney fees credited to him and 40 percent of the attorney fees earned in excess of $500,000.

[10] We granted leave for several licensed Washington attorneys to file an amicus brief in support of Banks's position. We have reviewed the brief of amici curiae as well as STL's answer. Following oral argument, Banks moved to disregard the appendix in STL's answer. Because the appendix cites materials that were not in the record before this court, we grant Banks's motion to disregard the appendix. RAP 10.3(a)(8).

[11] Banks also argues that this interpretation of RPC 5.6 allows firms to circumvent the restrictions in RPC 1.5(a)-(c) on fees. Because Banks did not make this argument before the trial court, under RAP 2.5(a), we do not consider this argument.

III

Banks next argues that STL breached the agreement by withholding wages for two client matters. We disagree.

In construing a written contract, the basic principles require that (1) the intent of the parties controls, (2) the court determines the intent from reading the contract as a whole, and (3) a court will not read an ambiguity into a contract that is otherwise clear and unambiguous. Felton v. Menan Starch Co., 66 Wn.2d 792, 797, 405 P.2d 585 (1965). "'An interpretation of a writing which gives effect to all of its provisions is favored over one which renders some of the language meaningless or ineffective.'" GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 140, 317 P.3d 1074 (2014) (quoting Wagner v. Wagner, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980)). "It is a fundamental precept of contract law that contracts must be interpreted in accordance with all of their terms." Storti v. Univ. of Wash., 181 Wn.2d 28, 38, 330 P.3d 159 (2014). If a contract is unambiguous, summary judgment is proper even if the parties dispute the legal effect of a certain provision. Voorde Poorte v. Evans, 66 Wn. App. 358, 362, 832 P.2d 105 (1992).

Under the agreement, Banks would "not have a set fee, if any, on trucking cases as the car wreck cases are expected to compensate [Banks] for any time spent on the trucking cases." The addendum reiterates: "You will not have a set fee on cases. Fee splits will be made based on overall work on the files, origination, and at Seattle Truck Law's discretion as they have been in the past."

The agreement also expressly provides that if Banks leaves STL:

> [Adams] will keep all fees on any files left with the firm after you leave, on the theory that if you leave the case it is a dog (difficult case), and any fee will be well earned by myself or another lawyer here at the firm. <u>You will have no claims on these files</u>.

(Emphasis added). And under the addendum, "[o]ther than income discussed below, the other aspects and terms of our November 29, 2017 agreement (bar dues, CLE, separation terms to include files you take with you, <u>files you leave</u>, etc. . . . ) will remain the same." (Emphasis added).

As for client I.H., the case was opened in December 2018 and settled in July 2020, before Banks left STL. But Banks did not originate the case. STL asserted that Banks sent three e-mails on the I.H. case and did no other work. Banks asserted: "I was on several e-mails. I had several discussions with Mr. Adams. I recall reviewing the file, giving my input. I was asked to draft some motions. I don't recall the specific motions, but I was requested to draft motions." STL "exercised its discretion, subject to the terms of the Agreement, and determined that Banks was not to be credited any fees in the I.H. matter." The terms of the agreement and addendum unambiguously provide STL with this discretion.

As for client P.B., a trucking case, the case was opened in 2019 and did not settle until summer 2021 after Banks left STL. STL continued to work on the case into 2022. A separate stage of the P.B. matter focused on an uninsured motorist claim. Before he left STL, Banks was credited with 100 percent of the fees for that portion of the case. The agreement was unequivocal, if Banks left STL, STL would keep all fees on files left with STL and Banks would have no claims on the files.

We affirm.

_Mann, J._

WE CONCUR:

_Feldman, J._

_Birk, J._